**EFILED IN OFFICE**
CLERK OF THE GEORGIA
STATE-WIDE BUSINESS COURT
**23-GSBC-0009**
**JUDGE BILL HAMRICK**
**OCT 31, 2023 06:13 PM**

*Angie T. Davis*
Angie T. Davis, Clerk of Court
Georgia State-wide Business Court

**IN THE GEORGIA STATE-WIDE BUSINESS COURT
STATE OF GEORGIA**

| | |
|---|---|
| LIBERTY ONE FUNDING TRUST and LIBERTY TWO FUNDING TRUST<br><br>Plaintiffs,<br><br>- against -<br><br>BRUCE ACHENBACH, NANCY BELSER, ANDREW COSTANZA, ANDREW DARROW, DAVID DARROW, JONATHAN DARROW, JAY GRIMM, JR., ROBERT KRAKOVITZ, MOSHE MALKA, LEON MALNIK, BARRY SEPTIMUS, and PHYLLIS SIFEN<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT, STAY OF ARBITRATION, AND OTHER RELIEF** |

NOW COME Plaintiffs in the above-captioned action and, pursuant to O.C.G.A. § 9-4-1 *et seq*. (the Declaratory Judgment Act) and O.C.G.A. § 9-9-1 *et seq*. (the Georgia Arbitration Code, or "GAC"), show the Court as follows:

## PRELIMINARY STATEMENT

1. On October 10, 2023, Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Jay Grimm, Jr., Robert Krakovitz, Moshe Malk, Leon Malnik, Barry Septimus, and Phyllis Sifen (hereinafter "Defendants") initiated an arbitration against Plaintiffs Liberty One Funding Trust and Liberty Two Funding Trust (together, "Liberty" or "Plaintiffs") before an American Arbitration Association (AAA) panel in Atlanta, Georgia. Ex. A. Plaintiffs move to stay that arbitration and for a declaration that (1) Jay Grimm,

Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen may not pursue arbitration against Plaintiffs, because they have not entered into a pre-dispute arbitration agreement with Plaintiffs; and (2) the arbitration claims of Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus, the latest of which accrued in April 2016, are time-barred and may not be pursued under the GAC, O.C.G.A. § 9-9-5.

2. In the 2004 to 2005 time period, Liberty provided non-recourse premium financing for individuals seeking to procure life insurance policies. Specifically, Liberty entered into "Financing Agreements" with individuals and with LLCs they established, pursuant to which the individuals paid no money of their own, and Liberty paid all premiums and other charges to obtain and maintain life insurance policies. When the insureds passed away, the financing balances became due, and, as set forth in the Financing Agreements, were settled from a portion of the death benefits paid by the insurance companies.

3. Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus are the heirs of six individuals who obtained funding for life insurance policies from Liberty (the "Insureds"). The Insureds passed away between October 2010 and April 2016, shortly after which these Defendants collectively received over $1.6 million in death benefits, the full amounts due under the Financing Agreements.

2

4.  The Financing Agreements and incorporated paperwork set forth the amount of the death benefit that would likely be provided to the beneficiaries based on the year of death of the Insureds.  Each year, the Insureds received letters providing an estimate of the insurance payout if the Insureds were to pass away that year.  Yet from when they entered into the agreements in 2004 or 2005 to their passing, none of the Insureds complained or raised concerns about those amounts.  Nor did Defendants raise any concerns during the seven or more years since they received the $1.6 million, until shortly before or at the time of filing the arbitration.

5.  The claims these Defendants have brought in the AAA arbitration are a belated after-the-fact attempt to squeeze more money out of Liberty.  The three claims asserted by Defendants in the arbitration and the statute of limitations for each are: Illegal Wagering and Lack of Insurable Interest (at most, six years under Georgia law); Breach of Contract and Indemnification, and Breach of Implied Covenant of Good Faith and Fair Dealing (six years under Georgia law from the date the insurance benefits became due); and Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c) and 1962(d) (four years under federal law).  None would be timely if asserted in court, and Defendants should not be able to escape the time bar by slipping their untimely claims into arbitration.

6.  Section 5 of the GAC authorizes this Court to impose the statute of limitations as a bar to Defendants' purported claims in arbitration: "If a claim sought to be

arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration or to vacate the award, as provided in this part." O.C.G.A. § 9-9-5(a).

7. Section 6 of the GAC provides that a party may apply to stay arbitration on the grounds that "[n]o valid agreement to submit to arbitration was made." O.C.G.A. § 9-9-6(b)(1).

8. Plaintiffs seek a stay of arbitration pursuant to the GAC and a declaratory judgment that Defendants' claims are time-barred or not subject to an agreement to arbitrate.

## STATEMENT OF JURISDICTION AND VENUE/IDENTITY OF THE PARTIES

9. Plaintiff Liberty One Funding Trust ("Liberty One") is a Delaware statutory trust authorized to do business in the State of Georgia, with the principal address of 400 Northridge Road, Suite 600, Atlanta, Georgia 30350. Wells Fargo Bank, N.A., out of its Atlanta office at 400 Northridge Road, Suite 600, acted as Georgia Trustee of Liberty One.

10. Plaintiff Liberty Two Funding Trust ("Liberty Two") is a Delaware statutory trust authorized to do business in the State of Georgia, with the principal address of 400 Northridge Road, Suite 600, Atlanta, Georgia 30350. Wells Fargo Bank, N.A., out of its Atlanta office at 400 Northridge Road, Suite 600, acted as Georgia Trustee of Liberty Two.

11. Liberty One entered into Financing Agreements with Dana Belser, whose heir Nancy Belser is a Defendant; Angelo Costanza, whose heir Andrew Costanza is a Defendant; Stanley Darrow, whose heirs Andrew Darrow, David Darrow, and Jonathan Darrow are Defendants; and Helen Wilkenfeld, whose heir Barry Septimus is a Defendant.  *See* Exs. B-E (the "Liberty One Financing Agreements").[1]

| Defendant | Heir of | Date of Financing Agreement | Date of Death (Appx) | Date of Payment of Net Death Benefit to Defendants | Amount of Net Death Benefit Payment to Defendants |
|---|---|---|---|---|---|
| Nancy Belser | Dana Belser | 11/22/2004 | 10/8/2010 | 12/18/10 | $271,239.49 |
| Andrew Costanza | Angelo Costanza | 12/7/2004 | 12/22/2011 | 3/18/12 | $260,961.30 |
| Andrew Darrow, David Darrow, Jonathan Darrow | Stanley Darrow | 9/20/2004 | 6/22/2014 | 9/18/14 | $288,355.61 |
| Barry Septimus | Helen Wilkenfeld | 12/3/2004 | 3/14/2011 | 4/18/11 | $292,670.00 |

12. The Liberty One Financing Agreements, Section 7.11(b) provide for personal jurisdiction in this Court over Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, and Barry Septimus, as heirs of Dana Belser, Angelo Costanza, Stanley Darrow, and Helen Wilkenfeld, who agreed "to submit to the personal jurisdiction of the federal and state courts sitting in Fulton County,

---

[1] The Liberty One and Liberty Two Financing Agreements, referenced as Exhibits B-G to this Complaint, are highly confidential.  As such, these Exhibits are being filed as "Provisionally Sealed" along with a Motion to file permanently under seal.

Georgia, for the sole purpose of enforcing this Agreement (including, where appropriate, issuing injunctive relief)."[2]

13. The Liberty One Financing Agreements state they are to be governed under the law of the State of Georgia, including "***all rights and remedies being governed by said law***." *Id*. § 7.12 (emphasis added).

14. Liberty Two entered into Financing Agreements with Walter Achenbach, whose heir Bruce Achenbach is a Defendant, and Victor Malka, whose heir Moshe Malka is a Defendant. *See* Exs. F-G (the "Liberty Two Financing Agreements").

| Defendant | Heir of | Date of Financing Agreement | Date of Death | Date of Payment of Net Death Benefit to Defendants | Amount of Net Death Benefit to Defendants |
|---|---|---|---|---|---|
| Bruce Achenbach | Walter Achenbach | 6/7/2005 | 4/6/2016 | 6/18/16 | $275,278.95 |
| Moshe Malka | Victor Malka | 4/27/2005 | 12/13/2013 | 5/18/14 | $224,982.85 |

15. The Liberty Two Financing Agreements, Section 8.11(b), provide for personal jurisdiction in this Court over Bruce Achenbach and Moshe Malka, as heirs of Walter Achenbach and Victor Malka, who agreed "to submit to the personal jurisdiction of the federal and state courts sitting in Fulton County, Georgia, for the

---

[2]    The Financing Agreements are binding upon the Defendants as heirs of the Insureds. *See Ralph* v. *Ward*, 109 Ga. 363, 366 (1899) (ruling that an agreement shall bind one's heirs and privies). Indeed, the Defendants purport to assert claims in arbitration arising from the Financing Agreements.

6

sole purpose of enforcing this Agreement (including, where appropriate, issuing injunctive relief)."

16. The Liberty Two Financing Agreements state they are to be governed under the law of the State of Georgia, including "**all rights and remedies being governed by said law**." *Id*. § 8.12 (emphasis added).

17. The Liberty One Financing Agreements and Liberty Two Financing Agreements also supply venue in this Court. O.C.G.A. § 9-9-4(b)(1) provides that "[v]enue for applications to the court shall lie: (1) [i]n the county where the agreement provides for the arbitration hearing to be held." The Liberty One Financing Agreements and Liberty Two Financing Agreements specify that the arbitration hearing will be held in Atlanta, Georgia. Exs. B-E §7.11(b), Exs. F-G § 8.11(b).

18. Defendants all have initiated an arbitration proceeding against Liberty. *See Achenbach et al*. v. *Liberty One Funding Trust et al*., AAA Case No. 1-23-0004-4523 (initiated October 10, 2023) ("*Achenbach* Arbitration") (Demand attached as Exhibit A).

19. Plaintiffs seek to stay the arbitration claims of Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen, with whom they have not entered into an arbitration agreement. Because the *Achenbach* Arbitration designates Atlanta,

7

Georgia as the place of arbitration, venue here is appropriate, and this Court has subject matter jurisdiction over these claims.[3]

20. Plaintiffs seek to stay the arbitration claims of Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus and for a declaration that the claims are untimely under GAC Section 5. This Court has subject matter jurisdiction over these claims. *See Cantor Colburn LLP* v. *Gs-Cleantech Corp.*, 874 S.E.2d 859, 867 (Ga. Ct. App. 2022).

## FACTUAL BACKGROUND

### The Liberty Premium Finance Program

21. The Liberty premium finance programs allowed individuals to obtain life insurance on their own lives using non-recourse financing provided by Liberty.

22. Through these programs, the Insureds, who were all high net worth individuals (or purported to be such), knowingly entered into financing agreements ("Financing Agreements") for which they were required to — and certified they did — obtain advice from independent legal and financial advisors about the transaction.

---

[3]    The is not the first time that Defendants' counsel has asserted purported claims on behalf of a putative claimant in respect of an insured who had no contractual basis for any claim against Liberty.

23. The Insureds and their beneficiaries (Defendants here) invested zero dollars and collectively received north of $1.6 million.  In exchange, the Insureds agreed that Liberty would be repaid, out of the proceeds of the insurance policies after the Insureds' passing, in respect of the funds advanced by them and certain costs with accrued interest.

24. The Financing Agreements set forth explicit formulas for calculating the amounts due to Liberty, affording Liberty modest rates of return on its substantial investments.  The balance of the insurance policies' proceeds were paid to the Defendants.  To ensure that the Insureds understood the arrangements, Liberty provided them with non-guaranteed projections of the amounts their heirs would receive, depending upon how long the Insureds lived.  In all cases, Liberty received no more than they were due pursuant to the formulas in the financing agreements. The Insureds and Defendants received all of the benefits of the bargains they made when the Insureds contracted with Liberty.

25. Now, despite having received what they were promised and having invested no money of their own, after waiting between 7 and 13 years, Defendants have abruptly pursued claims in arbitration, arguing that Liberty should not receive the stipulated amounts agreed to in the Financing Agreements or even a return of the premiums that Liberty advanced in these financing transactions.

*The* Achenbach *Arbitration*

26. Defendants have initiated an arbitration proceeding against Liberty.  *See Achenbach et al*. v. *Liberty One Funding Trust et al*., AAA Case No. 1-23-0004-4523 (initiated October 10, 2023) ("*Achenbach* Arbitration") (Demand attached as Exhibit A).

27. Defendants have asserted claims for (1) under Georgia law, Illegal Wagering and Lack of Insurable Interest (first cause of action); (2) under Georgia law, Breach of Contract and Indemnification, and Breach of Implied Covenant of Good Faith and Fair Dealing (second cause of action); and (3) under federal law, Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c) and 1962(d) ("RICO") (third cause of action).

28. In the *Achenbach* Arbitration, Defendants seek:

i.    the full face amount of the Insureds' life insurance policies, disregarding Liberty's payment of premiums and costs, and disregarding the formulas set forth in the Financing Agreements;

ii.   treble damages under RICO;

iii.  attorneys' fees and costs; and

iv.   interest, including pre-judgment interest.

29. Liberty has not participated in the *Achenbach* Arbitration with respect to Defendants.  Liberty has filed this action in lieu of answering the Statement of Claim in the *Achenbach* Arbitration as respects Defendants.

30. As set forth more specifically below, Liberty would be prejudiced by being forced to arbitrate the stale claims Defendants seek to pursue.  The Insureds, all of whom are deceased, entered into the Financing Agreements almost two decades ago, in 2004 and 2005.  The Liberty Programs are no longer accepting new participants, and none of the individuals who facilitated the transactions with the Insureds are available to Liberty or under its control.  Defendants' counsel in a prior arbitration has highlighted the lack of individuals with knowledge of the underlying events in prior arbitrations involving the Liberty program in arguing the claims and defenses and, upon information and belief, is likely to do so again in the *Achenbach* Arbitration.  The Insureds passed away seven to thirteen years ago, and it is uncertain and unlikely that their email accounts and files are fully preserved and searchable. The loss of records over time is illustrated by the fact that the Defendants' counsel cannot even determine from Defendants' files who did or did not enter into transactions with Liberty.  Thus, information and documents needed to support Liberty's defenses are no longer available.

31. Defendants allege that the Financing Agreements should be declared void because the insurance policies here lacked insurable interest.  The assessment of

11

insurable interest is made at the time of a transaction, O.C.G.A. § 33-24-3, which here were all consummated in 2004 and 2005. The *Achenbach* complaint asserts that the assessment of insurable interest depends on the intent of the contracting parties. *See* Ex. A ¶ 72 ("The real thing to be ascertained in any given instance is, **what was the actual object of the parties** . . . ." (emphasis added) (quoting *Exchange Bank of Macon* v. *Loh*, 31 S.E. 459, 462 (Ga. 1898))); *id.* ¶ 74 ("[Liberty] **knew or should have known** that the Program and Financing Agreements they created violated applicable insurable interest laws and generated Policies that were mere human life wagers. To be sure, [Liberty] and [its] principals and agents engaged legal advisors to opine on the validity of the Program and whether it complied with insurable interest laws. Based on that advice, [Liberty was] aware that the existence of a valid insurable interest was based, at best, on a hyper-technical legal analysis that expressly did *not* consider the details of or express any opinion on the annuities used in connection with the Financing Agreements." (emphasis added)). Thus Defendants' insurable interest claim seeks to put squarely at issue the knowledge and intent of the parties to contracts formed nearly 20 years ago, a claim which Defendants let lie without challenge while Liberty was making insurance premium payments that Defendants would have it forfeit.

32. The Financing Agreements at issue here were negotiated nearly 20 years ago, and the individuals who negotiated them are either deceased or outside of Liberty's

12

control, meaning that much extrinsic evidence as to the meaning of any ambiguous terms will be unavailable. In the Statement of Claim filed in the arbitration, Defendants allege: "[Liberty] breached and committed defaults (and plan to continue breaching and committing defaults) under the terms of the Financing Agreements as explained in detail above, including by receiving and retaining death benefits far in excess of what they were contractually entitled to receive." Ex. A. ¶ 84. Defendants were aware of the amounts of death benefits they received between 7 and 13 years ago (depending on the Defendant), and nothing has changed in the interim that would shed any further light on the claim. Defendants have no justification for waiting several years or more than a decade to bring these claims.

33. The Breach of Implied Covenant of Good Faith and Fair Dealing claim seeks to put at issue the state of mind of Liberty, actions of Liberty, and communications to and actions of the Insureds, all of whom are deceased. Specifically, Defendants allege that: Liberty "convinced elderly individuals to execute Financing Agreements ostensibly designed to provide legitimate premium financing for life insurance when, in fact, the transactions were secretly driven by another component altogether, which was a massively oversized annuity that was charged to the loan but whose excess payments were used by [Liberty] to line Liberty's pockets. . . . [Liberty] also charged the Insureds other excessive and undisclosed fees. In so doing, [Liberty] did not operate in good faith." Ex. A ¶ 92.

34. The RICO claim similarly seeks to put at issue the state of mind of Liberty and communications to the Insureds.  Specifically, Defendants allege that: "[Liberty] conducted and participated in the conduct of the Enterprise's affairs by **knowingly** devising and participating in a scheme whereby, with the **intent** to defraud Insureds and their families and to enhance income, the Enterprise (i) deceived insureds about the terms and conditions of the Financing Agreements; [and] (ii) charged Insureds and their families for annuities that **they were unaware of** . . . . [Liberty] committed a pattern of racketeering acts or caused a pattern of racketeering acts . . .by means of, *inter alia*, **concealing** the true terms of the Financing Agreements, **making intentional misrepresentations** regarding the Program, and arbitrarily abusing the discretion given to them under the terms of the Financing Agreements." Ex. A ¶¶ 109-10 (emphasis added).

35. In defense, Liberty is likely to assert counter-claims arising from certain Insureds' misrepresentations about their qualifications for the program and other material contract terms.  Due to Defendants' long delay in asserting claims, however, evidence substantiating the Insureds' states of mind and program eligibility (including satisfaction of financial thresholds) is unlikely to be obtainable from their heirs so many years following the Insureds' deaths.

36. Liberty would also be prejudiced by Defendants' claims for pre-judgment interest, spanning a period of 7 to 13 years during which they sat on their claims, at a statutory rate that far exceeds what a market investment would have returned.

***Relevant Provisions of the Financing Agreements***

37. The Liberty One Financing Agreements, Exs. B-E, Section 7.11(b) provide that the parties ***may*** arbitrate claims, but do not require arbitration of all disputes:

> (b)    All Disputes shall in the first instance be discussed amicably between the parties with a view to resolving such Dispute, commencing upon one party giving other parties written notice of such Dispute.  In the event that such Dispute is not resolved within thirty (30) days after such notice (or such longer period as the parties may agree in writing with respect to any such Dispute), any party may submit such Dispute to be finally settled by arbitration administered under the Rules by a panel of three arbitrators sitting in Atlanta, Georgia.  One arbitrator shall be nominated by the party initiating arbitration at the time of the filing of its demand for arbitration, the second arbitrator shall be nominated by the opposing party(ies) at the time of the filing of its answering statement, and the third arbitrator (who shall act as chairman) shall be jointly nominated by party-nominated arbitrators if they are able to agree.  If the first two party nominated arbitrators are unable to agree upon a third within thirty (30) days after the nomination of the second, or if either party fails to nominate an arbitrator as set forth herein, an arbitrator shall be appointed pursuant to the Rules.  The award of the arbitrators shall be final and binding upon the parties, and shall not be subject to any appeal or review.  The parties agree that such award may be recognized and enforced in any court of competent jurisdiction.  The parties agree to submit to the personal jurisdiction of the federal and state courts sitting in Fulton County, Georgia, for the sole purpose of enforcing this Agreement (including, where appropriate, issuing injunctive relief), the agreement to arbitrate contained herein and any award resulting from arbitration pursuant to this Section 7.11 and, to the fullest extent permitted by law, waive
>
> any objection which they may have at any time to the laying of venue of any proceedings brought in such court and any claim that such proceedings have been brought in an inconvenient forum.

38. The Liberty One Financing Agreements state they are to be governed under the law of the State of Georgia, including "***all rights and remedies being governed by said law***."  *Id*. § 7.12 (emphasis added).

SECTION 7.12. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the local law of the State of Georgia (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said law.

39. The Liberty Two Financing Agreements, Ex. F-G, Section 8.11(b) provide that the parties *may* arbitrate claims, but do not require arbitration of all disputes:

(b)    All Disputes shall in the first instance be discussed amicably between the parties with a view to resolving such Dispute, commencing upon one party giving other parties written notice of such Dispute. In the event that such Dispute is not resolved within thirty (30) days after such notice (or such longer period as the parties may agree in writing with respect to any such Dispute), any party may submit such Dispute to be finally settled by arbitration administered under the Rules by a panel of three arbitrators sitting in Atlanta, Georgia. One arbitrator shall be nominated by the party initiating arbitration at the time of the filing of its demand for arbitration, the second arbitrator shall be nominated by the opposing party(ies) at the time of the filing of its answering statement, and the third arbitrator (who shall act as chairman) shall be jointly nominated by party-nominated arbitrators if they are able to agree. If the first two party nominated arbitrators are unable to agree upon a third within thirty (30) days after the nomination of the second, or if either party fails to nominate an arbitrator as set forth herein, an arbitrator shall be appointed pursuant to the Rules. The award of the arbitrators shall be final and binding upon the parties, and shall not be subject to any appeal or review. The parties agree that such award may be recognized and enforced in any court of competent jurisdiction. The parties agree to submit to the personal jurisdiction of the federal and state courts sitting in Fulton County, Georgia, for the sole purpose of enforcing this Agreement (including, where appropriate, issuing injunctive relief), the agreement to arbitrate contained herein and any award resulting from arbitration pursuant to this Section 8.11 and, to the fullest extent permitted by law, waive

any objection which they may have at any time to the laying of venue of any proceedings brought in such court and any claim that such proceedings have been brought in an inconvenient forum.

40. The Liberty Two Financing Agreements state they are to be governed under the law of the State of Georgia, including "*all rights and remedies being governed by said law*." *Id*. § 8.12 (emphasis added).

16

SECTION 8.12. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the local law of the State of Georgia (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said law.

41. The Liberty One and Liberty Two Financing Agreements provide that a party shall indemnify the other for its "reasonable costs and expenses, including, without limitation, fees and disbursement of counsel" incurred by the other party in enforcing the agreements against the defaulting party. *See* Exs. B-E § 7.01, Exs. F-G § 8.01.

## COUNT I - PETITION FOR STAY OF ARBITRATION (O.C.G.A. § 9-9-6)
**(Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen)**

42. Plaintiffs repeat and re-allege paragraphs 1 through 41 as if set forth herein.

43. Plaintiffs have entered into no agreement with Defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen and have not agreed to arbitration with them.

44. Plaintiffs have not participated in the *Achenbach* arbitration as to Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen.

45. This Court is authorized to and should stay the arbitration pursuant to O.C.G.A. § 9-9-6(b)(1) ("[A] party who has not participated in the arbitration . . . may apply to stay arbitration on the grounds that . . . [n]o valid agreement to submit to arbitration was made . . . .").

17

## COUNT II - PETITION FOR STAY OF ARBITRATION (O.C.G.A. § 9-9-5)
### (Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus)

46. Plaintiffs repeat and re-allege paragraphs 1 through 45 as if set forth herein.

47. The Liberty One and Liberty Two Financing Agreements make clear that Georgia law governs all rights and "remedies," the latter of which includes statutes of limitations. *See Hunter* v. *Johnson*, 376 S.E.2d 371, 372 (Ga. 1989) (holding that, under Georgia law, statutes of limitation are procedural because they "look only to the remedy"). The intent of these choice of law provisions is clear: Georgia law is to cover both substantive causes of action in any dispute and procedural issues that address the scope of remedies, such as the statute of limitations.

48. In the *Achenbach* Arbitration, Defendants have asserted claims for (1) under Georgia law Illegal Wagering and Lack of Insurable Interest (first cause of action); (2) under Georgia law, Breach of Contract and Indemnification, and Breach of Implied Covenant of Good Faith And Fair Dealing (second cause of action); and (3) Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c) and 1962(d) (third cause of action).

49. Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus seek to arbitrate claims against Liberty that accrued between December 2010 and June 2016, when they received the payments of death benefits on life insurance policies

procured through the Liberty programs.  Defendants sat on their claims for more than seven years.  In that time, evidence relevant to the claims and defenses in the case likely has been irretrievably lost.

50. Under Georgia law, while there is not a specific statute of limitations for Illegal Wagering and Lack of Insurable Interest (O.C.G.A. § 33-24-3(i)), the statute of limitations for simple written contracts generally is six years and for other actions on contracts is four years.  *See Gen. Elec. Credit Corp.* v. *Home Indem. Co.*, 309 S.E.2d 152, 156 (Ga. Ct. App. 1983) ("The public policy of this state as expressed by the legislature is that actions on contracts shall be brought within six years." (citing O.C.G.A. § 9-3-24)); O.C.G.A. § 9-3-26.

51. Under Georgia law, the statutes of limitations for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing are six years from the time the contractual payment becomes due and payable.  *See Jackson Nat'l Life Ins. Co. v. Crum*, 2023 WL 6442932, at *10 (N.D. Ga. July 20, 2023), *appeal filed*, No. 23-13192 (11th Cir. Sept. 21, 2023); O.C.G.A. § 9-3-24.

52. Under federal law, the statute of limitations for claims under RICO is four years from when the plaintiff discovers or should have discovered the injury.  *See Youngblood-West* v. *Aflac Inc.*, 796 F. App'x 985, 991 (11th Cir. 2019).  Here, Defendants could and should have "discovered" any injury when they received the payments of the net death benefits.  Indeed, there are no facts that have been learned

19

since that time that were needed to bring the claims in the *Achenbach* Arbitration. And the Statement of Claim in the *Achenbach* Arbitration cites and relies on no facts that were learned after the date of the payment of the net death benefits.

53. Thus, the applicable statutes of limitations on Defendants' purported claims expired, at the latest, in June 2022. Any claims Defendants might bring against Liberty in a court of law are, therefore, time-barred.

54. Plaintiffs have not participated in the *Achenbach* arbitration as to Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus.

55. Plaintiffs would suffer prejudice if they were forced to arbitrate Defendants' stale claims without the evidence needed to litigate the claims and defenses.

56. This Court is authorized to and should exercise its discretion to impose the statute of limitations as a bar to Defendants' untimely claims in arbitration in accordance with O.C.G.A. § 9-9-5(a) ("If a claim sought to be arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration . . . ."), and may stay the arbitration pursuant to §§ 9-9-5(a) and 9-9-6(b)(3) ("[A] party who has not participated in the arbitration . . . may apply to stay arbitration on the grounds that . . . . [t]he arbitration is barred by limitation of time.").

20

## COUNT III - DECLARATORY JUDGMENT (O.C.G.A. § 9-4-2)
### (All Defendants)

57. Plaintiffs repeat and re-allege paragraphs 1 through 56 as if set forth herein.

58. This dispute presents the Court with an actual controversy that creates uncertainty and insecurity with respect to the rights, status, and other legal relations between the parties because Defendants have asserted claims against Liberty that are time-barred.

59. Plaintiffs are entitled to a Declaratory Judgment that they have entered into no agreement to arbitrate the claims of Defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen.

60. Plaintiffs are entitled to a Declaratory Judgment that Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus's claims in arbitration are time-barred.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

i.  Stay the *Achenbach* Arbitration pursuant to O.C.G.A. §§ 9-9-5 and 9-9-6 with respect to Defendants;

ii. Declare that Plaintiffs have entered into no agreement to arbitrate the claims of Defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen;

21

iii.    Declare that Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, and Barry Septimus's claims are time-barred pursuant to O.C.G.A. § 9-9-5;

iv.    Award Plaintiffs' attorneys' fees and disbursements pursuant to the Financing Agreements, Exs. B-E § 7.01, Exs. F-G § 8.01 (a party shall indemnify the other for its "reasonable costs and expenses, including, without limitation, fees and disbursement of counsel" incurred by the other party in enforcing the agreements against the defaulting party); and

v.    Provide such further relief as this Court may deem just and proper.

Respectfully submitted this 31st day of October, 2023.

*Attorneys for Plaintiffs*

/s/*Terry R. Weiss*

Terry R. Weiss, Esq.
Ga. Bar No. 746495
trweiss@duanemorris.com
Catherine G. Lucas, Esq.
Ga. Bar No. 567369
klucas@duanemorris.com

**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309-3929
(404) 253-6912 (telephone)
(404) 759-2158 (fax)
Words: 4475

*Joel Kurtzberg, Esq.
jkurtzberg@cahill.com
*Thorn Rosenthal, Esq.

22

trosenthal@cahill.com
*Lauren Perlgut, Esq.
LPerlgut@cahill.com

**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
(212) 701-3000

*pro hac vice motion forthcoming*

# EXHIBIT A

# Exhibit Provisionally Filed Under Seal

# EXHIBIT B

# Exhibit Provisionally Filed Under Seal

# EXHIBIT C

# Exhibit Provisionally Filed Under Seal

# EXHIBIT D

# Exhibit Provisionally Filed Under Seal

# EXHIBIT E

# Exhibit Provisionally Filed Under Seal

# EXHIBIT F

# Exhibit Provisionally Filed Under Seal

# EXHIBIT G

# Exhibit Provisionally Filed Under Seal