# EXHIBIT C

**OPERATING AGREEMENT**
**OF**
**HELEN WILKENFELD 2004, LLC**

**THIS OPERATING AGREEMENT** (this **"Operating Agreement"**) of **HELEN WILKENFELD 2004, LLC**, a Georgia limited liability company (the **"Company"**), is adopted as of the date of the filing of Articles of Organization for the Company with the Georgia Secretary of State, by the Trustee of the **HSW FAMILY IRREVOCABLE TRUST** under agreement dated November 8, 2004 (**"Member"**), and **WELLS FARGO BANK, N.A.**, in its capacity as manager hereunder and not in its individual capacity (**"Manager"**), and **MARC FAIVISH**, a New York resident (**"Special Manager"**).

1. **Organization.** The Company will be formed as a limited liability company under the Georgia Limited Liability Company Act (the **"Act"**), pursuant to Articles of Organization to be filed with the Secretary of State of Georgia in substantially the form attached hereto as **Exhibit A** and incorporated herein by reference (the **"Articles"**). Simultaneously with the execution hereof, the Manager is authorized and directed to cause the Articles to be filed with the Secretary of State of the State of Georgia. The Act, the Articles and this Operating Agreement shall govern the Company. This Operating Agreement is the operating agreement of the Company.

2. **Purpose of Company.** The sole and exclusive purpose of the Company is to enter into and perform its obligations under that certain "Liberty Premium Finance Program Financing Agreement" in substantially the form attached hereto as **Exhibit B** and incorporated herein by reference (the **"Financing Agreement"**) to be entered into among the Company, Liberty One Funding Trust, a Delaware statutory trust, and **HELEN WILKENFELD**, a Florida resident, (the "**Insured**"). All capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms under the Financing Agreement. The Manager is hereby directed to execute and deliver on behalf of the Company the Financing Agreement and the other Financing Documents and, subject to the provisions of this Agreement relating to Elective Actions, to cause the Company to perform all of its obligations under the Financing Documents.

3. **Sole Member.** Member is hereby admitted as the sole member of the Company. During the term of this Operating Agreement, there shall at all times be only one (1) member of the Company. The Member shall not be permitted to withdraw as a member prior to the date when all amounts to be paid under the Financing Agreement have been fully and irrevocably paid in full (the **"Termination Date"**) without the advance written consent of the Secured Party, nor shall any "event resulting in cessation of membership" as set forth in O.C.G.A. Section 14-11-601.1 cause the Member to cease to be a member of the Company.

4. **Authorized Activity of the Company.** The Company shall be authorized to execute the Financing Documents and to do any and all acts as required under the Financing Documents and to otherwise fully perform all of the obligations of the "LLC" under the Financing Documents. The Company shall have the authority to sign such additional documents

or take such additional acts in furtherance of the above stated purpose of the Company with the express written consent of the Secured Party. The Company shall not engage in any business or activity whatsoever except as specifically authorized by the Financing Documents and this Operating Agreement.

5. **Capital Contributions.** As of the date hereof, Member has made a capital contribution to the Company of Fifty and no/100 Dollars ($50.00) in respect of its member interest in the Company. Member may, but shall not be obligated to, make additional capital contributions to the Company as determined from time to time by Member for the purpose of (i) enabling the Company to repay to the Funding Trust the amount of any Advances to the Company and/or accrued and unpaid interest thereon, or (ii) replacing the Policy, each in accordance with the terms of the Financing Agreement. Any additional capital contributions made for the purpose of paying the principal or accrued interest with respect to any of the Advances shall be remitted by Company to the Funding Trust within ten (10) Business Days of receipt by the Company. The Member shall make no other capital contributions to the Company prior to the Termination Date without the express written consent of the Secured Party.

6. **Property of the Company.**

6.1 Limitation on Property of Company. Until the Termination Date, the Company shall own no property other than its interest in the Policy to be purchased on the life of the Insured pursuant to the Financing Documents and any other property or rights held pursuant to or permitted by the Financing Documents or this Operating Agreement, provided, however, that the Company may establish a reasonable reserve for its operating and administrative expenses.

6.2 Member's Interest in Company Property. The Member's ownership interest in the Company shall be personal property, but the Member shall have no interest in specific property of the Company. At all times after the date hereof, the Company shall hold title to all of its property in the name of the Company and not in the name of Member. The Company's credit and assets shall be used solely for the benefit of the Company, and no asset of the Company shall be transferred or encumbered for, or in payment of, any individual obligation of Member.

7. **Manager.**

7.1 Initial Manager. From the date hereof until the Termination Date, the management of the Company shall be vested exclusively in **WELLS FARGO BANK, N.A.**, as the initial Manager of the Company. Any action taken by **WELLS FARGO BANK, N.A.** in its capacity as Manager of the Company shall be taken solely in such capacity and shall not be deemed to have been taken in its individual capacity or in its capacity as trustee of Member, trustee of the Funding Trust, trustee of the SPIA Trust, trustee of the Master Trust or as the Indenture Trustee, notwithstanding that **WELLS FARGO BANK, N.A.** may also be serving in such additional capacities.

7.2 Prior to the Termination Date, and except as otherwise expressly provided in this Operating Agreement, the Articles or the Act, the Manager shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise to act on behalf of and to bind the Company. The Member shall have no management powers and no right or power to bind the Company prior to the Termination Date.

7.3 Capacity of Manager. At any time when the Manager of the Company is also serving as trustee of the Member any action taken by the Manager in such capacity shall be taken solely in such capacity and shall not be deemed to have been taken in its capacity as Trustee of Member.

7.4 Principal Office. The principal office of the Company shall be 400 Northridge Road, Suite 600, Atlanta, Fulton County, Georgia 30350. All records of the Company shall be maintained at the Company's principal office, which shall at all times be located in the State of Georgia.

7.5 Resignation; Removal and Succession of Manager.

(a) Resignation. The Manager may at any time resign by instrument in writing signed by the Manager or its authorized representative and delivered to the Special Manager, Member, Insured and the Secured Party. No such resignation shall be effective until a successor Manager approved by the Secured Party pursuant to subsection (c) below shall have undertaken to act as Manager hereunder.

(b) Removal. Member shall have no authority to remove the Manager prior to the Termination Date without the express written consent of the Secured Party. If the Secured Party consents to such removal, then notice of such removal shall be given to the Special Manager and the Insured.

(c) Successor Manager. A successor Manager shall be nominated as follows:

(i) Nomination of Successor Manager by Special Manager. Within five (5) Business Days of the notice of resignation, or within five (5) Business Days following the date upon which Manager ceases to serve as Manager for any reason, the Special Manager shall name a successor Manager who is then ready, willing and able to serve in such capacity and who is a "Qualified Institution," meaning a bank or trust company then administering trust assets of at least One Hundred Million Dollars ($100,000,000), that is qualified and authorized to act as a fiduciary in and otherwise conduct business in the State of Georgia, who is approved in advance by the Secured Party, and who is not a "related or subordinate party" to the Insured within the meaning of Section 672(c) of the Internal Revenue Code.

(ii) Nomination of Successor Manager by Insured. If the Special Manager fails to name a successor within such five (5) Business Day period, then the Insured shall, within five (5) Business Days following the failure of the Special Manager to nominate a Successor Manager, name a Successor Manager who shall be a Qualified Institution who is approved in advance by the Secured Party and is not a "related or subordinate party" to the Insured within the meaning of Section 672(c) of the Internal Revenue Code.

(iii) Nomination by Court. In the event that no Successor Manager has been nominated within ten (10) Business Days following notice of resignation to the Special Manager, Member, Insured and the Secured Party, the Manager shall be entitled to petition the Superior Court of Fulton County, Georgia, or any other Court of competent jurisdiction within the State of Georgia to nominate a Successor Manager.

(d) Special Manager as Interim Manager. Should the Manager cease to serve prior to a successor assuming the duties of Manager, the Special Manager shall act as an interim Manager, and have the duties, rights and obligations of a Manager during such time, prior to the qualification of a Successor Manager.

7.6 Resignation; Removal and Succession of Special Manager.

(a) Resignation. The Special Manager may at any time resign by instrument in writing signed by the Special Manager and delivered to the Manager, Member, Insured and the Secured Party. No such resignation shall be effective until a successor Special Manager approved by the Secured Party pursuant to section 7.7 hereof shall have undertaken to act as Special Manager hereunder.

(b) Removal. Member shall have no authority to remove the Special Manager prior to the Termination Date without the express written consent of the Insured and the Secured Party. If the Insured and the Secured Party consent to such removal, then notice of such removal shall be given to the Manager and the Special Manager.

7.7 Successor Special Manager. A successor Special Manager shall be nominated as follows:

(i) Nomination of Successor Special Manager. At the time of the Special Manager's notice of resignation as set forth above, or within five (5) Business Days following the date upon which Special Manager ceases to serve as Special Manager for any reason, the Special Manager shall name a successor Special Manager who is (a) then ready, willing and able to serve in such capacity, (b) is approved in advance by the Secured Party and the Insured, and (c) not a "related or subordinate party" to the Insured within the meaning of Section 672(c) of the Internal Revenue Code.

(ii) Nomination of Successor Special Manager by Insured. If the Special Manager fails to name a successor within such five (5) Business Day period, then the Insured shall, within five (5) Business Days following the failure of the Special Manager to nominate a Successor Manager, name a Successor Special Manager who is approved in advance by the Secured Party and is not a "related or subordinate party" to the Insured within the meaning of Section 672(c) of the Internal Revenue Code.

(iii) Nomination by Court. In the event that no Successor Special Manager has been nominated within five (10) Business Days following notice of resignation to the Special Manager, any one or more of the Member, Insured, the Secured Party, or the Manager shall be entitled to petition the Superior Court of Fulton County, Georgia, or any other Court of competent jurisdiction within the State of Georgia to nominate a Successor Manager.

8. **Duties of Manager**. Subject, in all events, to Section 9 hereof, the Manager shall be required to devote such time to the affairs of the Company as may be necessary to manage and operate the Company including, without limitation, the following:

8.1 Financing Documents. The Manager shall be responsible for causing the Company to fulfill and discharge its obligations under the Financing Documents

8.2 Distributions to Member. The Company shall distribute to Member all cash received from the Funding Trust including, without limitation, all Monthly Payments, and the amount of the Net Death Benefit, within ten (10) Business Days following receipt thereof by the Company; provided, however, that the Manager may withhold from any such distributions any amount necessary to pay any debts, taxes or operating expenses of the Company, or to establish a reasonable reserve for the payment of such expenses.

8.3 Transfers to Funding Trust. The Manager shall cause the Company to remit to the Funding Trust any money or other property with respect to any Policy or the proceeds thereof received from any Person other than the Funding Trust for any purpose other than Monthly Payments or the Net Death Benefit.

8.4 Erroneous Monthly Payments. In the event that the Funding Trust determines that any amount remitted or transferred from the Funding Trust to the Company was transferred in error, the Company shall repay to the Funding Trust such erroneously received amount within five (5) Business Days of the Funding Trust's notice to the Company that such Advance or other amount was transferred from the Funding Trust to the Company in error. If any such erroneous Advance or other amount has, at the time of such notice, already been distributed to the Member, the Manager shall have no liability to the Funding Trust for such amount, but the Funding Trust shall be entitled to withhold an amount equal to such erroneous Advance from future Advances to the Company, if any. Additionally, the Manager shall, at the request of the Funding Trust or the Secured Party, use commercially reasonable efforts to initiate such actions, including legal action, to recover from the Member or any beneficiary of a Member any amount erroneously distributed to the Company and distributed by the Company to such

Member (and subsequently distributed to the beneficiary of the Member), provided, however, that any such action shall be at the expense of the party requesting such action and subject to the provisions of Section 10.5.

8.5 Contact with Member or Beneficiary. The Manager shall maintain contact with the Member or, if the Manager is then acting as Trustee of the Member, then with the primary income beneficiary(ies) of the Member on a quarterly basis to verify the Member's or beneficiary's current addresses, contact information and other relevant information by sending to such person correspondence with a prepaid return response from time to time.

8.6 Tax Returns and Government Filings. The Manager shall be responsible for preparing and filing any federal, state or other tax returns or reports required to be filed with any taxing authority or provided to the Member, as well as any other annual returns or reports required to be filed with any state government agency. The Manager may satisfy its obligations hereunder and with respect to Section 14 hereof by retaining, at the expense of the Company, a firm of independent certified public accountants (the "**Accountants**") to perform the obligations of the Manager thereunder. The Manager shall be deemed to have discharged its obligations hereunder upon its retention of the Accountants and the Manager shall have no liability with respect to the negligence or misconduct of the Accountants, except in the case of the gross negligence of the Manager in failing to take any necessary corrective action with respect to the Accountants after having acquired actual knowledge of the need of such corrective action and having had a reasonable opportunity to take such action.

8.7 Financial Reports to Member/Beneficiary. The Manager shall provide to the Member or, if the Manager is then acting as Trustee of the Member, to the primary income beneficiary(ies) of the Member, quarterly financial reports of all receipts and disbursements from the Company. The Manager shall also provide to the Funding Trust and the Secured Party copies of all correspondence sent to or received from any insurance company with respect to the Policy.

8.8 Death Benefit Claims. The Manager shall be responsible for preparing any claims documents with respect to any claim for the Policy and shall cooperate in good faith with the Secured Party to assist the Secured Party in filing any such claim.

8.9 Administrative Nature of Duties. The responsibilities of the Manager are administrative in nature and are strictly limited to those specifically set forth herein. No implied covenants or obligations shall be read into this Operating Agreement including, without limitation, the obligation to make any discretionary decisions, all such discretion being vested in the Special Manager.

9. **Discretionary Duties of Special Manager**. Whenever this Agreement, the Financing Agreement or any other document or instrument provides that an action may be taken or not taken at the option, election or in the discretion of the Company, including, without limitation, any amendment to any of the Financing Documents (the "Elective Action"), the Manager shall not cause the Company to exercise such option, make such election, or exercise such discretion unless the Manager receives written notice (the "Elective Notice") from the

Funding Trust, the Secured Party or either of their designees (1) stating that certain Elective Action may be taken by a specified date, (the "Elective Date") (2) listing the alternative courses of action that may be taken, and (3) recommending a course of action. Within one Business Day after the receipt by the Manager of an Elective Notice, the Manager shall deliver such Elective Notice to the Special Manager. The Manager shall respond to any Elective Action as directed in writing from the Special Manager; provided, however, that in the event the Special Manager fails to provide a written instruction at least one Business Day prior to the Elective Date, the Manager shall respond to the Elective Action as recommended pursuant to clause (3) above, it being hereby agreed that except in the event of its own gross negligence or willful misconduct in carrying out any Elective Action as so instructed or recommended, the Manager shall have no liability to any Person for following any such written instruction of the Special Manager or for responding to the Elective Action as recommended pursuant to clause (3) above. Any action by the Manager shall be binding on the Company and the signature of the Special Manager shall not be required to bind the Company. The Special Manager shall have no liability to any party for any decision of the Special Manager absent gross negligence or intentional misconduct, and the Company shall indemnify the Special Manager and hold the Special Manager harmless from any loss or expense incurred by the Special Manager for any decision made in good faith and not tainted with gross negligence or intentional misconduct.

10. **Manager's Rights and Limitations on Liability**.

10.1 In the absence of bad faith on its part, the Manager may conclusively rely upon certificates or opinions furnished to the Manager and conforming to the requirements of this Operating Agreement in determining the truth of the statements and the correctness of the opinions contained therein; provided, however, that the Manager shall have examined such certificates or opinions so as to determine compliance of the same with the requirements of this Operating Agreement.

10.2 The Manager shall not be personally liable or accountable to any person, under any circumstances; provided, however, that the Manager may be liable to the Company or Member for the Manager's own grossly negligent actions, grossly negligent failure to act, willful misconduct, fraud or bad faith; provided, further, that the Manager shall have no personal liability for any error or judgment made in good faith by any employee of the Manager except for such person's grossly negligent actions, grossly negligent failure to act, willful misconduct, fraud or bad faith. In particular, but not by way of limitation (and subject to the exceptions set forth in the preceding sentence):

(a) The Manager shall not be liable with respect to any action taken or omitted to be taken by it in accordance with the instructions provided by Member or the Special Manager in accordance with and subject to this Operating Agreement;

(b) The Manager shall not be responsible for or in respect of and makes no representation as to the validity or sufficiency of any provision of this Operating Agreement or for the form, character, genuineness, sufficiency, value or validity of any of the Company's property, and the Manager shall in no event assume or

incur any liability, duty or obligation to Member, other than as expressly provided for herein;

(c) The Manager shall be under no obligation to exercise any of the rights or powers vested in it by this Operating Agreement, or to institute, conduct or defend any litigation under this Operating Agreement or otherwise or in relation to this Operating Agreement, at the request, order or direction of Funding Trust, the Secured Party, the Member, the Special Manager or any other person, unless the Manager has been offered security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities that may be incurred by the Manager therein or thereby; and

(d) The Manager shall incur no liability if, by reason of any provision of any present or future law or regulation thereunder, or by any force majeure event, including but not limited to natural disaster, war or other circumstances beyond its reasonable control, the Manager shall be prevented or forbidden from doing or performing any act or thing which the terms of this Operating Agreement or any other agreement provide shall or may be done or performed, or by reason of any exercise of, or failure to exercise, any discretion provided for in this Operating Agreement.

(e) The Manager shall not be required to take any action hereunder if the Manager shall have reasonably determined, or shall have been advised by counsel, that such action is likely to result in liability on the part of the Manager or is contrary to the terms hereof or is otherwise contrary to law.

(f) No provision of this Operating Agreement or any other document or instrument shall require the Manager to expend or risk funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Manager shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

10.3 Whenever the Manager is unable to decide between alternative courses of action permitted or required by the terms of this Operating Agreement, or is unsure as to the application, intent, interpretation or meaning of any provision of this Operating Agreement, the Manager shall promptly give notice (in such form as shall be appropriate under the circumstances) to the Special Manager, with a copy to the Member, requesting instruction as to the course of action to be adopted, and, to the extent the Manager acts in good faith in accordance with any such instruction received, the Manager shall not be liable on account of such action to any person. If the Manager shall not have received appropriate instructions within ten (10) business days of sending such notice (or within such shorter period of time as reasonably may be specified in such notice or may be necessary under the circumstances) it may, but shall be under no duty to, take or refrain from taking such action which is consistent, in its view, with this Operating Agreement, and the Manager shall have no liability to any person for any such action or inaction.

10.4 The Manager shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties and need not investigate any fact or matter in any such document as long as the Manager has otherwise satisfied its obligations under this Operating Agreement. The Manager may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such body has adopted such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the method of the determination of which is not specifically prescribed herein, the Manager may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or other authorized officers of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Manager for any action taken or omitted to be taken by it in good faith in reliance thereon.

10.5 In the exercise of its rights and powers and in the performance of its duties and obligations under this Operating Agreement, the Manager may consult with counsel and other skilled professionals to be selected in good faith and employed by it. The Manager shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the opinion or advice of any such counsel or other such persons as long as no officer or agent of the Manager has any actual knowledge that such opinion or advice is inappropriate or based on incorrect information.

10.6 Notwithstanding anything contained herein to the contrary, the Manager will not be required to take any action in any jurisdiction other than in the State of Georgia if the taking of such action would (i) require the consent or approval or authorization or order for the giving of notice to, or the registration with or taking of any action in respect of, any state or other governmental authority or agency of any jurisdiction other than in the State of Georgia, (ii) result in any fee, tax or governmental charge under the laws of any jurisdiction or any political subdivisions thereof in existence on the date hereof other than the State of Georgia becoming payable by the Manager; or (iii) subject the Manager to personal jurisdiction in any jurisdiction other than the State of Georgia for causes of action arising from acts unrelated to the consummation of the transactions by the Manager contemplated hereby.

10.7 To the extent that, at law (whether common or statutory) or in equity, the Manager has duties (including fiduciary duties) and liabilities relating thereto to the Company or Member or to any other person that is a party to or is otherwise bound by this Operating Agreement, (i) the Manager shall not be liable to the Company, Member, the Special Manager or any other such person for the Manager's good faith reliance on the provisions of this Operating Agreement, and (ii) the Manager's duties and liabilities otherwise existing at law (whether common or statutory) or in equity, are hereby limited and restricted as expressly set forth in this Operating Agreement.

10.8 Nothing herein shall prevent the Manager or its affiliates from engaging in whatever activities they choose, whether the same are competitive with the Company or otherwise, and any such activities may be undertaken without having or incurring any obligation to offer any interest in such activities to the Company or Member, or require the Manager to

permit the Company or Member or their respective affiliates to participate in any such activities, and as a material part of the consideration for the execution of this Operating Agreement by Member, Member hereby waives, relinquishes, and renounces any such right or claim of participation.

11. **Indemnification of Manager**

11.1 The Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of Company property) shall indemnify, save harmless, and pay all judgments and claims against the Manager relating to any liability or damage incurred by reason of any act performed or omitted to be performed by the Manager in connection with this Operating Agreement, including reasonable attorneys fees incurred by the Manager in connection with the defense of any action based on any such act or omission, which attorneys fees may be paid as incurred.

11.2 In the event of any action by Member against the Manager, including a Company derivative suit, the Company shall indemnify, save harmless, and pay all expenses of the Manager, including reasonable attorneys fees incurred in the defense of such action.

11.3 The Company shall indemnify, save harmless, and pay all expenses, costs, or liabilities of the Manager, if for the benefit of the Company and in accordance with this Operating Agreement the Manager makes any deposit or makes any other similar payment or assumes any obligation in connection with any property proposed to be acquired by the Company and suffers any financial loss as the result of such action.

11.4 Notwithstanding the provisions of Sections 11.1, 11.2, and 11.3 above, such Sections shall be enforced only to the maximum extent permitted by law and the Manager shall not be indemnified from any liability for the fraud, intentional misconduct, gross negligence or a knowing violation of the law which was material to the cause of action.

11.5 Notwithstanding the foregoing, or anything in this Operating Agreement to the contrary, the Manager shall be entitled to indemnification pursuant to, and in accordance with, that certain Indemnification Agreement entered into with the Secured Party and an affiliate or affiliates of the Funding Trust.

12. **Transfer Restrictions**. Prior to the Termination Date, Member shall not sell, assign, transfer, mortgage, pledge, encumber, hypothecate or otherwise dispose of all or any part of its interest in the Company, nor shall Member take any action which might result in the dissolution of the Company, without the prior or simultaneous written consent of the Funding Trust and the Secured Party. Any attempted transfer of Member's interests or rights with respect to the Company shall, to the extent not consented to pursuant to this paragraph, not bind or be recognized by the Company. Transfers restricted hereby shall include both voluntary and involuntary transfers and transfers by operation of law.

13. **Debts of Company**. The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely

of the Company, and none of Member, the Manager or the Special Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being the Member, the Manager, or the Special Manager of the Company. Member shall be liable only to make its capital contributions set forth in Section 5 hereof and shall not be required to lend any funds to the Company or, after its capital contributions have been made, to make any additional contributions, assessments or payments to the Company. Neither the Manager nor the Special Manager shall have any personal liability for the repayment of any capital contributions of Member.

14. **Tax Status of Company**. Member intends that the Company be treated as a corporation for Federal income tax purposes, and the Manager is hereby directed to file an election to such effect pursuant to Treasury Regulation § 301.7701-3.

15. **Dissolution and Winding Up**. The Company shall not dissolve, terminate, wind up its affairs or liquidate, with or without the consent of the Member, prior to the Termination Date without the express written consent of the Secured Party. No event of dissociation of Member shall cause the Company to dissolve prior to the Termination Date without the express written consent of the Secured Party, nor shall the Member have the power to elect to dissolve prior to the Termination Date without the written consent of the Secured Party. The Company shall dissolve and commence winding up upon thirty (30) days after the occurrence of the Termination Date, unless Member shall elect to continue the Company by signed written instrument executed within thirty (30) days of the Termination Date. Upon such dissolution, the Company shall, after paying all debts of the Company and expenses of dissolution, or making reasonable allowance therefor, distribute all remaining property of the Company to Member. The Manager, or if none, a person approved by Member, may act as liquidating trustee of the Company, unless otherwise provided by law. The liquidating trustee shall liquidate the Company as promptly as shall be practicable in accordance with this Section 15. Upon the completion of winding up of the Company, a liquidating trustee or other representative of the Company shall file a certificate of cancellation with the Secretary of State of Georgia as provided in the Act.

16. **Amendment**. This Operating Agreement and the Company's Articles of Organization may be amended only by a written instrument signed by Member and the Manager, with the express written consent of the Secured Party.

17. **Governing Law**. This Operating Agreement shall be governed by and construed under the laws of the State of Georgia (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said laws.

18. **Notices**. Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to c/o Wells Fargo Bank, N.A., 400 Northridge Road, Suite 600, Atlanta, Georgia, 30350, Attention: Corporate Trust Services, Phone: 678-795-8132, Fax: 770-992-4720, (b) in the case of Member, to Wells Fargo Bank, N.A., as Trustee of the **HSW FAMILY**

**IRREVOCABLE TRUST**, 400 Northridge Road, Suite 600, Atlanta, Georgia, 30350, Attention: Corporate Trust Services, Phone: 678-795-8132, Fax: 770-992-4720, (c) in the case of the Manager, to Wells Fargo Bank, N.A., 400 Northridge Road, Suite 600, Atlanta, Georgia, 30350, Attention: Corporate Trust Services, Phone: 678-795-8132, Fax: 770-992-4720, (d) in the case of the Special Manager, to **Marc Faivish**, [redacted], Cedarhurst, New York 11516, Phone: 917-975-0376, and (e) in the case of any of the foregoing, at such other address as may be designated by written notice to the others.

19. **Binding Effect**. This Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective administrators, legal representatives, permitted successors and permitted assigns. The Agreement inures to the benefit of each of Funding Trust and Secured Party. Each of Funding Trust and Secured Party shall be considered as a third party beneficiary of this Agreement.

20. **Counterparts**. This Operating Agreement may be executed in two or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one Operating Agreement.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]**

**IN WITNESS WHEREOF**, the undersigned have caused this Operating Agreement to be executed as of November 16, 2004.

**MEMBER:**

**HSW FAMILY IRREVOCABLE TRUST**, under agreement dated November 8, 2004

**By: Wells Fargo Bank, N.A.**, as Trustee

By: ______________________
Print name: EDWARD L. TRUITT, JR.
Title: VICE PRESIDENT

[SEAL]

**MANAGER:**

**WELLS FARGO BANK, N.A.**

By: ______________________
Print name: EDWARD L. TRUITT, JR.
Title: VICE PRESIDENT

[SEAL]

**SPECIAL MANAGER:**

______________________(SEAL)
Print name: ______________________



ATL 279414v1

# EXHIBIT "A"

## Form of Articles of Organization

**ARTICLES OF ORGANIZATION OF**
**HELEN WILKENFELD 2004, LLC**

1.

The name of the limited liability company is **HELEN WILKENFELD 2004, LLC** (the "*Company*").

2.

The management of the limited liability company is vested in two managers, a Manager, who has general administrative authority, and a Special Manager, whose authority shall be limited as set forth in the Operating Agreement for the Company. The initial Manager shall be **WELLS FARGO BANK, N.A.**. 400 Northridge Road, Suite 600, Atlanta, Georgia 30350, Attention: Corporate Trust Services. The initial Special Manager shall be **MARC FAIVISH**, [redacted], Cedarhurst, New York 11516.

**IN WITNESS WHEREOF**, the undersigned Organizer has executed these Articles of Organization on November 16, 2004.

Helen Wilkenfeld

Helen Wilkenfeld, Organizer

2004 NOV 16 PM 3: 26
SECRETARY OF STATE

**EXHIBIT "B"**

**Form of Financing Agreement**