**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Liberty One Funding Trust and Liberty Two Funding Trust,

Plaintiffs,

v.

Brian Achenbach, et al.,

Defendants.

______________________________ **Case No. 1:23-cv-5483-MLB**

Wells Fargo Bank, N.A. and Wells Fargo Delaware Trust Company, N.A.,

Plaintiffs,

v.

Bruce Achenbach, et al.,

Defendants.

______________________________/

# WELLS FARGO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

*Attorneys for Plaintiffs*
Wells Fargo Bank, N.A. and Wells Fargo Delaware Trust Company, N.A.

/s/*Terry R. Weiss*
Terry R. Weiss, Esq.
Ga. Bar No. 746495
trweiss@duanemorris.com
Catherine G. Lucas, Esq.
Ga. Bar No. 567369
klucas@duanemorris.com

**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309-3929
(404) 253-6912 (telephone)
(404) 759-2158 (fax)

-and-

Jonathan P. Hersey, Esq.
Admitted *Pro Hac Vice*
jonathan.hersey@klgates.com
**K&L GATES LLP**
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
(949) 253-0900 (telephone)
(949) 253-0902 (fax)

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENTS ............................1

II. ADDITIONAL UNDISPUTED FACTS.......................................................6

A. The Liberty Premium Finance Programs and Financing Agreements ........6

B. Additional Relevant Provisions of the Liberty Financing Agreements ......7

III. ADDITIONAL ARGUMENTS ......................................................................8

A. All Counterclaims Against WFDTC Should Be Dismissed Because It Was Never a Party to Any of the Liberty Financing Agreements.....................11

B. To the Extent Wells Fargo Bank Was a Party to a Liberty Financing Agreement, It Was Solely and Expressly in the Limited Capacity as Securities Intermediary ........................................................................11

C. Defendants' New Breach of Trust Counterclaim Is Barred by the Statute of Limitations..............................................................................................14

D. Defendants Lack Standing to Assert the Counterclaims Because They Are Not Signatories to the Financing Agreements, Nor Can They Bring Claims on Behalf of the Insureds' Estates Because They Have Not Been Appointed as Legal Representatives of the Estates ...................................18

IV. CONCLUSION..............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied World Assurance Co., Ltd. v. Bank of Utah*,
No. 217CV01188RJSJCB, 2023 WL 1785700 (D. Utah Feb. 6, 2023).......12, 13

*Archer W. Contractors, Ltd. v. Est. of Pitts*,
292 Ga. 219 (2012) ....................................................................................20

*Austin v. Nagareddy*,
344 Ga. App. 636 (2018) ..............................................................................6

*Berger v. Welsh*,
326 Ga. App. 290 (2014) ............................................................................12

*Boller v. Robert W. Woodruff Arts Ctr., Inc.*,
311 Ga. App. 693, 698 (2011) ....................................................................21

*Campbell v. Harmon*,
628 S.E.2d 308, 271 Va. 590 (2006) ..........................................................18

*Canada (Attorney General) v. Hislop*,
1 S.C.R. 429, 2007 SCC 10 [2007].............................................................18

*De La Riva v. Chavez*,
303 So. 3d 955 (Fla. Dist. Ct. App. 2020)...................................................18

*Dominic v. Eurocar Classics*,
310 Ga. App. 825 (2011) ............................................................................20

*Envision Printing, LLC v. Evans*,
336 Ga. App. 635, 786 S.E.2d 250 (2016) ..................................................12

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2nd Cir. 1987) ........................................................................6

*Hewitt Assocs., LLC v. Rollins, Inc.*,
308 Ga. App. 848 (2011) ............................................................................17

*Mayfield v. Heiman*,
317 Ga. App. 322 (2012) ............................................................................15

*Resurgens, LLC v. Ervin*,
No. A23A0892, 2023 WL 7011731 (Ga. Ct. App. Oct. 25, 2023) ....................20

*Rosebrock v. E. Shore Emergency Physicians, LLC*,
221 Md. App. 1, 108 A.3d 423 (2015) ............................................................18

*SCSJ Enterprises, Inc. v. Hansen & Hansen Enterprises, Inc.*,
319 Ga. App. 210, 734 S.E.2d 214 (2012) .......................................................11

*Wells Fargo Bank, N.A. v. Cook*,
332 Ga. App. 834 (2015) ..................................................................................15

**Statutes, Rules & Other Authorities**

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ......................................................4, 5

Fed. R. Civ. P. 12(b)(1)................................................................................1, 4, 21
Fed. R. Civ. P. 12(b)(6)................................................................................1, 4, 21
Fed. R. Civ. P. 12(b)(7)......................................................................................19
Fed. R. Civ. P. 19 ...............................................................................................19

Md. Code Ann., Est. & Trusts § 7-401 ................................................................18

N.Y. Est. Powers & Trusts Law § 11-3.2 ............................................................18

O.C.G.A. § 9-2-20(a) ....................................................................................19, 20
O.C.G.A. § 9-9-5(a) ...............................................................................................3
O.C.G.A. § 11-8-102...........................................................................................13
O.C.G.A. § 13-2-3...............................................................................................11
O.C.G.A. § 53-6-2...............................................................................................19
O.C.G.A. § 53-7-45.......................................................................................17, 18
O.C.G.A. § 53-12-307(a) ....................................................................................14

Plaintiffs and Counterclaim-Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank") and Wells Fargo Delaware Trust Company, N.A. ("WFDTC," and collectively with Wells Fargo Bank, "Wells Fargo") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Counterclaims filed by Defendants and Counterclaimants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Dean Flock, Jay Grimm, Jr., Robert Krakovitz, Moshe Malka, Leon Malnik, Barry Septimus, and Phyllis Sifen (collectively "Defendants") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION AND SUMMARY OF ARGUMENTS

Defendants, who are the purported heirs and beneficiaries of eleven unrelated insured persons who passed away many years ago (the "Insureds"), recently initiated an arbitration with the American Arbitration Association ("AAA") in Atlanta, Georgia against plaintiffs Liberty One Funding Trust and Liberty Two Funding Trust (collectively "Liberty") concerning the Liberty life insurance funding programs and Financing Agreements in which certain of the Insureds participated before they died. *See Achenbach, et al. v. Liberty One Funding Trust, et al.*, AAA Case No. 1-23-0004-4523 (initiated October 10, 2023) (the "*Achenbach* Arbitration"). They also named Wells Fargo Bank and WFDTC as additional Respondents in the *Achenbach* Arbitration with Liberty.

In response, Liberty and Wells Fargo filed separate complaints in the Georgia state court as summary proceedings under Georgia law—which governs all substantive and procedural aspects of the insurance funding agreements at issue in this dispute—because Georgia law vests courts with the authority and directive to abate improper arbitrations. Wells Fargo's Complaint and accompanying motion provided three reasons why the *Achenbach* Arbitration should be abated:

*First*, Defendants improperly initiated arbitration against Wells Fargo Bank in its *individual* capacity even though the plain language on the face of every Liberty Financing Agreement to which it was a party clearly states that Wells Fargo Bank was contracting and acting exclusively in the role of Securities Intermediary. Even worse, Wells Fargo Bank was never a party to any Liberty Financing Agreement with purported Insureds Jay Grimm, Sylvia Hankin, Abraham Malnik or Paul Sifen, or their respective heirs, and WFDTC was never a party to any Liberty Financing Agreement with *any* of the Insureds or their heirs. Thus, the *Achenbach* Arbitration could only proceed (if at all) against Wells Fargo Bank in its limited role as Securities Intermediary and with regard to only some of the Insureds, and it is not proper at all against WFDTC.

*Second*, Defendants lack privity and standing to arbitrate against Wells Fargo. Defendants cannot arbitrate claims *on their own individual behalves* because they themselves were not parties to the Liberty Financing Agreements, are not in privity

with Wells Fargo, and were not third-party beneficiaries to such agreements. Nor do the Defendants have standing to bring claims *on behalf of their respective Insureds' estate* because none of the Defendants has been appointed or recognized by any probate court as the estate's legal representative.

*Third*, even if the Defendants had standing and the right to pursue claims against Wells Fargo, each of the Defendants' claims in the *Achenbach* Arbitration for breach of contract and breach of implied covenant, to void the Liberty Financing Agreements as illegal wagers and as lacking insurable interests, and for alleged RICO violations, is barred by its applicable statute of limitations. From the time the Insureds entered into the Liberty Financing Agreements in 2004 and 2005 until their deaths, none complained about Liberty's premium payments or the contractual terms of repayment. When the Insureds died,[1] their beneficiaries collected the remaining net policy benefits without raising a claim. Any claims the Insureds or their heirs might have possessed have long-since expired. As permitted by Georgia law, Wells Fargo therefore included a claim in its Complaint to temporarily and then permanently stop the *Achenbach* Arbitration based on the expired statutes of limitations as to all Defendants except Flock with his counterclaim for breach of contract. *See* O.C.G.A. § 9-9-5(a) ("If a claim sought to be arbitrated would be

---

[1] With the exception of Henry Flock who died in 2022, all of the Insureds died between 2010 and 2016.

barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration . . . .").

After removing Liberty's and Wells Fargo's complaints from the Georgia state court to this Court where they have been consolidated, Defendants did not move to dismiss any of Liberty's or Wells Fargo's claims. They answered and filed counterclaims. Six of the Counterclaims are the same against Liberty and Wells Fargo. The first two request declaratory judgments that arbitration is not mandatory and that the Federal Arbitration Act, not the Georgia Arbitration Code, should govern. The other four curiously reallege the same claims that Defendants assert against Liberty and Wells Fargo in the *Achenbach* Arbitration. Finally, Defendants have asserted a new counterclaim for Breach of Trust under Georgia law only against Wells Fargo Bank.

Liberty and Wells Fargo (collectively "Plaintiffs") now respectfully move to dismiss each of the respective counterclaims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For clarity, brevity, and to avoid needless duplication, Wells Fargo joins and incorporates the arguments made by Liberty in its Motion and Memorandum of Law in support of its Motion to Dismiss. *See* Liberty Motion and Memo., filed March 8, 2024. Each of those same counterclaims against Wells Fargo should be dismissed for the same reasons.

Defendants' First Cause of Action seeking a declaratory judgment that

arbitration is not mandatory is easily rejected by the plain language of the Financing Agreements. The Financing Agreements contain arbitration clauses which, once invoked by either party, are mandatory. Further, even if Defendants had a right to litigate their claims in Court, they waived that right by initiating the *Achenbach* Arbitration. *See* Liberty Memo., Section IV.A at pgs. 8-15.

Likewise, Defendants' Second Cause of Action for a declaratory judgment that the *Achenbach* Arbitration is subject exclusively to the Federal Arbitration Act ("FAA") is also easily defeated by the plain language of the Financing Agreements that expressly state they are governed by Georgia state substantive *and* procedural law. And since Georgia law indisputably precludes arbitration of claims that have expired under their applicable statutes of limitations, Defendants are not entitled to a declaratory judgment that "no statute of limitations applies or can be applied by the arbitrators" in the *Achenbach* Arbitration. *See* Liberty Memo., Section IV.B at pgs. 15-18.

Defendants' Third, Fourth, Fifth, Sixth and Seventh Causes of Action against Wells Fargo—which include the same claims Defendants allege in the *Achenbach* Arbitration and the new claim for Breach of Trust against Wells Fargo Bank—should not only be dismissed because they are subject to mandatory arbitration and cannot be considered on their merits in this summary proceeding, but also all of the claims except those brought by Defendant Flock for alleged breach of contract are

barred by the applicable statute of limitations. *See* Liberty Memo., Section IV.C at pgs. 18-25 (discussing the expiration of the applicable statutes of limitations on Defendants Third through Sixth Counterclaims against Liberty).

The remainder of this Memorandum provides additional background and arguments unique to Wells Fargo and therefore not included in Liberty's Motion and Memorandum of Law as to why the counterclaims alleged against Wells Fargo should be dismissed.

Finally, should any of the counterclaims survive this Motion while others are permitted to proceed to arbitration, Wells Fargo respectfully requests that the Court exercise its discretion to stay further litigation of the remaining counterclaims until Wells Fargo's own summary claims and the *Achenbach* Arbitration are completed. Failing to do so will result in duplicative and potentially wasteful litigation and runs the risk of conflicting judgments. *See Austin v. Nagareddy*, 344 Ga. App. 636, 638 (2018) (trial court has broad discretion to stay nonarbitrable claims); *accord Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2nd Cir. 1987) (even under the FAA, where "arbitrable claims predominate and the nonarbitrable claims are of questionable merit," a broad stay order is appropriate).

## II. ADDITIONAL UNDISPUTED FACTS

### A. The Liberty Premium Finance Programs and Financing Agreements

As Liberty explains in its Motion, its premium finance programs allowed

individuals to obtain life insurance on their own lives using non-recourse financing provided by Liberty. *See* also Ex. D to Statement of Claim, attached as Ex. A to Wells Fargo's Complaint; Counterclaim ¶¶ 119 & 236. Through these programs, the Insureds, who were all high net worth individuals (or represented themselves to be such), knowingly entered into financing agreements for which they were required to—and certified they did—obtain advice from independent legal and financial advisors about the transaction. The Insureds benefited from the non-recourse premium financing while they were alive, and upon their deaths, the policy net benefits were paid to their beneficiaries. *Ibid.* In exchange, the Insureds agreed that Liberty would be repaid the funds it advanced and certain costs with accrued interest out of the proceeds of the insurance policies after the Insureds died but before the net payment was made to the beneficiaries.

### B. Additional Relevant Provisions of the Liberty Financing Agreements

Liberty's Memorandum quotes verbatim the language of the arbitration and governing law provisions in the Financing Agreements.[2] *See* Liberty Memo. at pgs. 5-6 (providing the text of the Dispute Resolution and Governing Law terms in

---

[2] The Financing Agreements are attached to and incorporated by reference into Wells Fargo's Complaint and Defendants' Counterclaims. *E.g.*, Counterclaims ¶¶ 63, 75-76, 80 & 91, attaching Exhs. A-D (promotional material, Irrevocable Trust, Insured/borrower LLC Operating Agreement, and Financing Agreement).

Sections 7.11 and 7.12 of the Financing Agreements); *see also* Counterclaims ¶ 91 & Exh. D (Wilkenfeld Liberty Financing Agreement).

While the Financing Agreements are certainly binding on the signatory parties and their successors, they expressly do ***not*** "confer upon any other Person a legal or equitable right." *Id.* No other persons, such as the Insureds' heirs, were intended as third party beneficiaries simply because they might receive benefits from the Insureds' estates after the Insureds' passed away. The Financing Agreements provide:

> SECTION 7.07. Assignment. The LLC and Insured may not assign this Agreement, or any of their rights, duties, or obligations hereunder, without the prior written consent of the Secured Parties [. . .]
>
> SECTION 7.08 Third Party Beneficiaries. Except as otherwise expressly provided herein to the contrary, this Agreement shall be binding upon and inure solely to the benefit of the parties hereto and the Secured Party, and their respective successors and permitted assigns, and nothing herein is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

## III. ADDITIONAL ARGUMENTS

Wells Fargo joins and incorporates herein by reference Liberty's arguments, authorities, and supporting evidence why the First Counterclaim for Declaratory Judgment that the arbitration provision is non-binding should be dismissed (*see* Liberty Memo. at Section IV.A, pgs. 8-15), and why the Second Counterclaim for

Declaratory Relief concerning the alleged exclusive application of the FAA should be dismissed (*id.* at Section IV.B, pgs. 15-18).

Wells Fargo also joins and incorporates herein by reference Liberty's arguments, authorities, and supporting evidence why the Third through Sixth (and in Wells Fargo's case, the Third through Seventh Counterclaims) should be dismissed for three distinct reasons:

- Defendants have no right to assert or pursue their "Merits-based" counterclaims in this summary proceeding, especially having already elected to file and pursue them in arbitration. *See* Liberty Memo. at Section IV.C.1, pgs. 18-19.
- As to four Defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen, the counterclaims should be dismissed because their respective Insureds never had any Financing Agreements with Liberty and Wells Fargo, and no evidence exists that they participated in any Liberty premium financing program. *See* Liberty Memo. at Section IV.C.2, pgs. 19-20.
- As to all Defendants except Dean Flock with regard to the breach of contract and implied covenant counterclaims, each of the Merits-based Counterclaims is barred by the applicable statute of limitations. *See* Liberty Memo. at Section IV.C.3(i)-(iii) (discussing the expiration of

the statutes of limitations for the Third and Fourth Counterclaims to void the Financing Agreement and policies based on alleged illegal wagering and lack of insurable interests, the Fifth Counterclaim for alleged breach of contracts and implied covenant, and the last Counterclaim for alleged RICO violations).

Wells Fargo has four additional arguments, discussed below, why Defendants' Counterclaims should be dismissed, namely that (1) WFDTC was never a party to any Liberty Financing Agreement so all claims against it fail; (2) to the extent that Wells Fargo Bank was a party to the Liberty Financing Agreements with seven of the Defendants, its role was expressly limited to that as a Securities Intermediary so it may not be sued in its individual capacity; (3) Defendants' Sixth Counterclaim for alleged Breach of Trust alleged only against Wells Fargo Bank is barred by the applicable 6-year statute of limitations; and (4) Defendants lack standing because they have not been adjudged to be the legal representatives of the Insureds' estates on whose behalf they are asserting the counterclaims, nor have they included all indispensable parties, *viz*. other heirs and beneficiaries, in their claims. Yet, Defendants also lack privity to bring and maintain the alleged breach of contract and breach of trust counterclaims on their individual behalves for harms they supposedly suffered as distinct from harms suffered by the Insureds' estates to which they have not been appointed as representatives.

## A. All Counterclaims Against WFDTC Should Be Dismissed Because It Was Never a Party to Any of the Liberty Financing Agreements

For the same reasons that the Counterclaims alleged by Defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen should be dismissed because neither they nor their respective Insureds were ever parties to a Liberty Financing Agreement, all Counterclaims should be dismissed against WDFTC, which also was never a party to such agreements. *E.g.*, Counterclaims, Exhs. A-D. Indeed, Defendants provided no evidence of any such agreements signed by WFDTC either with the Demand for Arbitration and Statement of Claim in the *Achenbach* Arbitration, or as attached to their Counterclaims in this Court.

## B. To the Extent Wells Fargo Bank Was a Party to the Liberty Financing Agreements, It Was Solely and Expressly in the Limited Capacity as Securities Intermediary

"Arbitration in Georgia is a matter of contract [and] [t]he construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction." *SCSJ Enterprises, Inc. v. Hansen and Hansen Enterprises, Inc.*, 319 Ga. App. 210, 212, 734 S.E.2d 214 (2012) (quoting *South Point Retail Partners v. North American Properties Atlanta,* 304 Ga. App. 419, 421 (2010)). In interpreting contracts, courts should seek to ascertain and uphold the intention of the parties, *see* O.C.G.A. § 13-2-3, and "avoid an interpretation … which renders portions of the language of the contract meaningless." *SCSJ Enterprises*, *supra*, 319 Ga. App. at

212 (quoting *Etowah Environmental Group v. Advanced Disposal Svcs.,* 297 Ga. App. 126, 131–132 (2009)).

Georgia courts have recognized a party's right to sign a contract only in a certain limited capacity. *See generally Envision Printing, LLC v. Evans*, 336 Ga. App. 635, 637, 786 S.E.2d 250, 251–52 (2016) (individual signed an arbitration agreement only in his capacity as officer of a limited liability company, Court of Appeals upheld summary judgment in favor of the individual because the individual did not sign the agreement in his individual capacity and it was clear that the intention of the signatories was that the individual signed only in his capacity as officer). Georgia Courts therefore enforce contracts only in the capacity in which they are signed. *Id.*

In a case similar to this one, a Utah District Court[3] noted that a court "must focus on the particular capacity in which a party is being sued in determining whether it has personal jurisdiction" over that party. *Allied World Assurance Co., Ltd. v. Bank of Utah*, No. 217CV01188RJSJCB, 2023 WL 1785700, at *8 (D. Utah Feb. 6, 2023). That includes concerns about arbitral jurisdiction, so the District Court concluded that when the subject of an arbitration includes an entity only in a specific capacity, the arbitration would not include the entity in its individual

[3] "Because [the Georgia] state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing" Georgia law regarding arbitration. *Berger v. Welsh*, 326 Ga. App. 290, 291 (2014).

capacity. *Id.* at *9. In short, "capacity matters." *Id.* at *8.

By definition, a Securities Intermediary is "[a] person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is *acting in that capacity*." O.C.G.A. § 11-8-102 (emphasis added). Here, with the few Insureds where Wells Fargo Bank was a party to a Financing Agreement, it clearly was a party *only* as Securities Intermediary. Indeed, even in the title and signature block of the Liberty Financing Agreements, Wells Fargo Bank is identified as Securities Intermediary:


WELLS FARGO BANK, N.A.,
in its capacity as securities intermediary

By: ______________________
Name:
Title: EDWARD L. TRUITT, JR.
Date: 12/7/04 VICE PRESIDENT
Place of execution: Atlanta, Georgia

*E.g.*, Counterclaim Exh. D, at CM/ECF Doc. 16-4, pg. 6 of 40 & pg. 30 of 40 (defining "Wells Fargo Bank" to mean "Wells Fargo Bank, N.A., a national banking association ***in its capacity as securities intermediary*** with respect to the LLC Account" (emphasis added)). Defendants have no right to sue Wells Fargo Bank—in court or in arbitration—in any capacity other than in its limited and defined role as Securities Intermediary. The Counterclaims, which are alleged against Wells Fargo Bank in its broad individual capacity, must be dismissed.

### C. Defendants' New Breach of Trust Counterclaim Is Barred by the Statute of Limitations

Defendants' Counterclaims allege a new Sixth Cause of Action for Breach of Trust under Georgia law against only Wells Fargo Bank. Wells Fargo Bank disputes the substantive merits of that claim, but reserves those arguments for adjudication at a later date if and when necessary. For now, it is sufficient that this counterclaim should be dismissed because the statute of limitations expired long before Defendants commenced the *Achenbach* Arbitration in late 2023.

Pursuant to O.C.G.A. § 53-12-307(a), the time to bring an action against a trustee is two years from the time the beneficiary receives a written report that adequately discloses the existence of the claim against the trustee. Or if no such report is received by the beneficiary, the limitation period is six years from the date the beneficiary discovered or reasonably should have discovered the subject of the claim.

In this case, the Insureds and the Special Managers of the Insureds' related Limited Liability Companies that were the borrowers under the Liberty Financing Agreements were provided with the payment formulas and annual "reports" known as Benefits Letters that adequately disclosed the financial status of their policies, including the amounts of their projected net benefit payouts.

> SECTION 1.08. Total Amount Due. The Payment Formula attached hereto as Appendix D sets forth the agreement of the parties with respect to calculations for determining the Total Amount Due, the Financing Balance and the Maturity Date Payment. Within thirty (30) days of each anniversary of the date of this Agreement, the Funding Trust shall provide to the LLC a statement setting forth what the Total Amount Due would have been if the Death Date had occurred on the date of such anniversary.

*See* TERMS AND CONDITIONS FOR LIBERTY PREMIUM FINANCE PROGRAM FINANCING AGREEMENT AMONG LIBERTY ONE FUNDING TRUST, THE LLC AND THE INSURED, § 1.08 (attached as Exh. D to Counterclaim at CM/ECF Doc. 16-4 pg. 12 of 40). These account statements were provided to the Insured and the Special Managers of the borrower LLCs at yearly intervals on the policy anniversaries. Each Defendant's counterclaim, to the extent it existed, therefore expired two years after the Insured received the Financing Agreement and at the latest two years after the first anniversary of the policy when they received the Benefits Letter reporting the account values and anticipated net payout. "A written report provides adequate disclosure of a claim 'if it provides sufficient information so that the beneficiary knows of such claim or reasonably should have inquired into the existence of such claim.'" *See Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834, 839 (2015) (regular periodic trust statements received by beneficiaries of charitable remainder annuity trust (CRAT) constituted a "report" that, when received by beneficiaries, would reduce limitations period for actions against trustee from six years to two years, even though statements did not reference any specific provision of the trust, where statements identified trust, trustee, and time

period covered by each statement, statements gave breakdown of the investment funds in which the trust was invested along with a description of the transactions and disbursements by the trustee during the designated time period, and the statements included an account summary for the designated time period).

But even if Defendants were able to raise a factual dispute about whether the reports that the Insureds and the Special Managers of their LLCs received were sufficiently adequate to reduce the statute of limitations from six to two years, Defendants' Breach of Trust counterclaim would still be barred by the longer six year time period that starts to run at the latest when the Insured or beneficiaries "reasonably should have discovered" the basis of the claim. *See Mayfield v. Heiman*, 317 Ga. App. 322, 326 (2012) (beneficiaries failed to exercise due diligence to discover breach of trust claim against trustee and accounting firm stemming from loan transaction entered into on behalf of trust prior to expiration of statute of limitations, where beneficiaries knew about the loan when it closed, beneficiaries had signed documents related to the loan prior to closing, and there was no evidence showing that trustee intentionally withheld from them information such as his opinion that the value of the assets might have declined, or what amount of money the trust would repay over the life of the loan transaction).

Here, Defendants' Counterclaim admits that the Insureds were informed about the formulas that would be applied in the calculation of the net payout benefits after

their death. They were also informed about, expressly acknowledged, and waived the "potential conflict of interest" with regard to Wells Fargo's alleged role as Trustee while also supposedly acting "for the benefit of Liberty and its principles." *See* Counterclaim ¶¶ 213-216 (admitting that the Financing Agreement transactional documents included an acknowledgment and waiver of the " 'potential conflict of interest' between Wells Fargo Bank acting as Trustee for the Irrevocable Trusts and the various other capacities in which Wells Fargo Bank was serving its true master, Liberty.")

Finally, Defendants cannot plead around the expired statute of limitations with vague and unsupported assertions of "intentional concealment" by Wells Fargo Bank, or that the Insureds and Defendants were somehow unreasonably deprived of the ability to know or discover the facts giving rise to the claim. *See* Counterclaim ¶¶ 220-222. The plain language of the agreements and the disclosures and waivers that Defendants admit were included therein (*id.* ¶ 216) belie any such claim. Defendants' counterclaim fails to include any facts, much less those required to be pled with specificity, that Wells Fargo Bank committed fraud or withheld some critical information that it was otherwise required to disclose in addition to the disclosures and information provided in the agreements. The question is not whether the statute should be equitably tolled, but rather, when the Insured and Defendants had a reasonable basis to investigate and know of their potential claim. *See, e.g.,*

*Hewitt Assocs., LLC v. Rollins, Inc.*, 308 Ga. App. 848 (2011) (a claimant asserting tolling based on fraud must adequately plead and prove the actual fraud, including details of the dates and contents of the misrepresentations that precluded earlier discovery). That was when they signed the Liberty Financing Agreement, but at the latest, when they received their first annual Benefits Letter report.

### D. Defendants Lack Standing to Assert the Counterclaims Because They Are Not Signatories to the Financing Agreements, Nor Can They Bring Claims on Behalf of the Insureds' Estates Because They Have Not Been Appointed as Legal Representatives of the Estates

Defendants did not sign any Liberty Financing Agreement and are therefore not parties to them. Accordingly, Defendants could only bring their claims, if at all, *on behalf of* the actual signatory, the Insured. *See* O.C.G.A. § 53-7-45. Yet, as far as Wells Fargo understands (and Defendants have provided no evidence to the contrary), none of the Defendants have been appointed as the legal representatives of their respective Insureds' estate.

Under Georgia law and the law of every state in which the Insureds lived, only judicially recognized personal representatives are authorized to prosecute and settle claims in favor of or against an estate. *See* Complaint ¶ 4; O.C.G.A. § 53-7-45 [permitting an estate's appointed representative to assign a claim to an heir or beneficiary]; *De La Riva v. Chavez*, 303 So. 3d 955, 959 (Fla. Dist. Ct. App. 2020) [in Florida, a personal representative is the only proper party to litigation involving the estate of decedent]; N.Y. Est. Powers & Trusts Law § 11-3.2 [in New York,

actions that belonged to the decedent may be pursued by personal representatives]; *Campbell v. Harmon*, 628 S.E.2d 308, 312 (2006) [in Virginia, personal representatives have standing to bring actions on behalf of an estate]; Md. Code Ann., Est. & Trusts § 7-401 [in Maryland, personal representatives have the right to pursue litigation]; *Rosebrock v. E. Shore Emergency Physicians, LLC*, 221 Md. App. 1, 12 (2015) [personal representative of the estate is authorized to maintain an action on behalf of decedent]; *Canada (Attorney General) v. Hislop*, 1 S.C.R. 429, 2007 SCC 10 (2007) [under Canadian law, personal actions by heirs on behalf of decedents are ordinarily barred].

Here, there is no evidence that the Defendants have been appointed as the representatives of the respective Insureds' estates, and there is no evidence of any assignment by any other representatives to them. The Defendants are not authorized to pursue the counterclaims here or in the *Achenbach* Arbitration unless and until they are so properly authorized. Indeed, if the Defendants act on behalf of the respective estates without express permission of the probate courts, they could be liable to the other heirs and beneficiaries for any harm caused to the estate under the legal doctrine of *executor de son tort*. O.C.G.A. § 53-6-2. Just because the Defendants call themselves heirs does not provide legal standing.[4]

[4] Defendants' lack of standing is highlighted by their own statements that they intend to replace one of the original *Achenbach* Arbitration claimants—Bruce Achenbach—with another alleged heir, Brian Achenbach. Neither Bruce nor

Additionally, Defendants do not stand in privity of contract even with Wells Fargo Bank in its capacity as Securities Intermediary and, therefore, lack standing to pursue their counterclaims for Breach of Contract, and Indemnification and Breach of Implied Covenant of Good Faith and Fair Dealing, and Breach of Trust. "As a general rule, one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract." *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828, 714 (2011); *see* O.C.G.A. § 9-2-20(a). A "third party has standing to enforce that type of contract if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." *Id.* However, "[s]tatus as a third-party beneficiary does not imply standing to enforce every promise within a contract, including those not made for that party's benefit." *Archer W. Contractors, Ltd. v. Est. of Pitts*, 292 Ga. 219, 226–27 (2012). Therefore, third parties must establish standing, even in arbitration. *Resurgens, LLC v. Ervin*, No. A23A0892, 2023 WL 7011731, at *5 (Ga.

Brian Achenbach was a party to any Liberty Financing Agreement, and neither has been appointed as the recognized legal representative of Walter Achenbach's estate. But Defendants' suggestion that they will simply "replace" Bruce with Brian begs the question of why Brian was not included as a claimant in the original *Achenbach* Arbitration. Defendants' failure to include all of the Insureds' respective heirs and beneficiaries means their claims should be dismissed for failure to name all indispensable parties. *See* Fed. R. Civ. P. 12(b)(7) & 19. Without their joinder, Wells Fargo faces the prospect of future duplicative and *seriatim* claims by various other unidentified heirs and beneficiaries who might later bring the same or similar claims.

Ct. App. Oct. 25, 2023) *(citing Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 311 Ga. App. 693, 698 (2011)).

Nor can the Defendants create proper standing by asserting that they were intended third party beneficiaries of the Liberty Financing Agreements. The plain language of the Liberty Financing Agreements would belie such a claim because they expressly state that "this Agreement shall be binding upon and inure solely ***to the benefit of the parties hereto and the Secured Party***, and their permitted assigns, and nothing herein is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement." Counterclaims, Exh. D (emphasis added). The net death benefits of the life insurance policies were paid to the Insureds' designated beneficiaries, not necessarily the "heirs," who were not parties to the policies or the Liberty Financing Agreements. *Id.*

While the Defendants do not appear to be alleging that they received standing or privity to maintain the Counterclaims by way of an express assignment from a different party, any such claim would fail. The Liberty Financing Agreements expressly state that "the Insured may not assign this Agreement, or any of their rights, duties, or obligations hereunder, without the prior written consent of the Secured Party." *Id.* Defendants provide no evidence of any assignment. Even if they did, the assignment would be a nullity bared by the Financing Agreement.

## IV. CONCLUSION

For each of the foregoing reasons, including those arguments incorporated from Liberty's concurrently filed Motion to Dismiss, Wells Fargo respectfully requests that each of Defendants' seven Counterclaims be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Alternatively, any remaining counterclaims should be stayed pending the resolution of Wells Fargo's own summary proceeding-based claims and the final resolution of any claims permitted to proceed in the *Achenbach* Arbitration.

## CERTIFICATION

The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font with a 1 inch top margin in accordance with L.R. 5.1B, N.D. Ga.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **WELLS FARGO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** upon all parties to this matter by electronically filing a copy of same with the Court's electronic filing system, which will automatically send an electronic copy to all counsel of record.

This 8th day of March, 2024.

*/s/Catherine G. Lucas*
Catherine G. Lucas
Ga Bar. No. 567369