**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Liberty One Funding Trust and Liberty
Two Funding Trust,

Plaintiffs,

v.

Brian Achenbach, et al.,

Defendants.

_________________________________ **Case No. 1:23-cv-5483-MLB**

Wells Fargo Bank, N.A. and Wells
Fargo Delaware Trust Company, N.A.,

Plaintiffs,

v.

Bruce Achenbach, et al.,

Defendants.

_________________________________/

# WELLS FARGO'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

*Attorneys for Plaintiffs*
Wells Fargo Bank, N.A. and Wells
Fargo Delaware Trust Company, N.A.

/s/*Terry R. Weiss*
Terry R. Weiss, Esq.
Ga. Bar No. 746495
trweiss@duanemorris.com
Catherine G. Lucas, Esq.
Ga. Bar No. 567369
klucas@duanemorris.com

**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309-3929
(404) 253-6912 (telephone)
(404) 759-2158 (fax)

-and-

Jonathan P. Hersey, Esq.
Admitted *Pro Hac Vice*
jonathan.hersey@klgates.com
**K&L GATES LLP**
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
(949) 253-0900 (telephone)
(949) 253-0902 (fax)

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. ARGUMENTS ..........................................................................................5

A. Defendants Utterly Fail to Carry Their Burden of Demonstrating Their Legal Capacity and Standing to Pursue the Counterclaims..........................5

B. Defendants May Not Litigate Counterclaims that They Lack Standing and Privity to Arbitrate ..........................................................................9

C. Defendants Counterclaims Against WFDTC and Against Wells Fargo Bank Individually are Subject to Dismissal for the Same Reasons ..........11

D. The New Sixth Counterclaim Against Wells Fargo Bank for Breach of Trust is Time-Barred.......................................................................12

III. CONCLUSION........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer W. Contractors, Ltd. v. Est. of Pitts*,
292 Ga. 219 (2012) ....................8

*Bischoff v. Osceola Cnty.*,
222 F.3d 874 (11th Cir. 2000) ....................6

*Bochese v. Town of Ponce Inlet*,
405 F.3d 964 (11th Cir. 2005) ....................6

*Dominic v. Eurocar Classics*,
310 Ga. App. 825 (2011) ....................11

*Edmonds* v. *Bates*,
178 Ga. App. 69 (1986) ....................13

*Freese* v. *Bank of America*,
2010 WL 11646973 (N.D. Ga. Jun. 8, 2010) ....................13

*Haynes v. Fincher*,
241 Ga. App. 179, 181 (1999) ....................11

*Hewitt Assocs., LLC v. Rollins, Inc.*,
308 Ga. App. 848 (2011) ....................15

*Mayfield v. Heiman*,
317 Ga. App. 322 (2012) ....................14

*Order Homes, LLC v. Iverson*,
300 Ga. App. 332, 685 S.E.2d 304, 308 & 310 (2009) ....................10

*Satilla Community Svc. Bd. v. Satilla Health Svcs.*,
275 Ga. 805 (2002) ....................9

*Volt Info. Sci., Inc. v. Board of Trustees. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ....................11

**Statutes**

O.C.G.A. § 9-2-20(a) .......... 11

O.C.G.A. § 9-9-5(a) .......... 4

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) .......... 13

Fed. R. Civ. P. Rule 11 .......... 7

Fed. R. Civ. P. 12(b) .......... 9, 15

Fed. R. Civ. P. 19 .......... 9

Plaintiffs and Counterclaim-Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank") and Wells Fargo Delaware Trust Company, N.A. ("WFDTC," and collectively with Wells Fargo Bank, "Wells Fargo") offer this Reply to Defendants' Opposition to Wells Fargo's Motion to Dismiss Defendants' Counterclaims. As it did with its Opening Brief, Wells Fargo joins and incorporates the arguments and authorities submitted by plaintiffs Liberty One Funding Trust and Liberty Two Funding Trust (collectively "Liberty") in their Reply.[1] Wells Fargo submits this separate Reply in support of the additional reasons it raised in its Motion as to why each of Defendants' Counterclaims, including the Sixth Counterclaim for alleged Breach of Trust by Wells Fargo Bank, should be dismissed.

## I. INTRODUCTION

Defendants' Opposition not only loses sight of Wells Fargo's Complaint and the basis for the Motion to Dismiss the Counterclaims, but it is also fraught with inconsistencies and insincerities.

Defendants chose to file their claims in arbitration, not in court. They did so without any reservation and certainly without any suggestion that were only

---

[1] Wells Fargo joinder and incorporation of Liberty's arguments, however, is not intended as an admission that all alleged facts about its roles in the insurance transactions are identical to Liberty's. For example, and as noted in Wells Fargo's Motion, Wells Fargo Bank was only a signatory to the Liberty Financing Agreements in the limited role and capacity of a statutory Securities Intermediary, and did not receive funds or pay costs on its own behalf. *See* Wells Fargo's Opening Br. at 11-13.

choosing arbitration because they assumed that is what Wells Fargo and Liberty would demand. Quite the contrary, the Statement of Claim that Defendants filed with the American Arbitration Association ("AAA") expressly alleges that this is now "the fourth nearly identical collective AAA arbitration" that Defendants' counsel has filed concerning an alleged STOLI scheme that they contend "violates Georgia insurable interest principles and is otherwise in violation of Georgia law." *See* Claimants' [Defendants'] Statement of Claim, ¶ 2 & fns. 1-2 (going so far as to assert that the AAA Tribunal should make some of the same findings here as in several of the prior arbitration proceedings with other parties).[2]

Yet despite their purposeful availment of arbitration and their unequivocal appeal for the application of Georgia law, Defendants now claim that this Court should apply the Federal Arbitration Act ("FAA") to somehow find that no statute of limitations exists. Opp. Br. at 18. Even worse, they proclaim that "none of the counterclaims are arbitrable"—and supposedly should never have been filed with the AAA at all—so Defendants should be allowed to pursue the same counterclaims here instead, where they unbelievably assert they had wanted to be all along. Opp. Br. at 18.

In their desperate attempt to avoid dismissal, Defendants miss the point of

[2] The Statement of Claim is attached as Ex. A to Wells Fargo's Complaint, which Defendants removed from the Georgia Statewide Business Court to this Court. *See* ECF No. 1-1 in Case No. 1:23-vc-05825, now consolidated into the current action.

Wells Fargo's Complaint and the grounds for its motion to dismiss the counterclaims. After receiving the Demand for Arbitration, Wells Fargo filed a *summary proceeding* in the Georgia state court to preclude the arbitration under Georgia law for three reasons:

*First*, because the Demand for Arbitration names the wrong parties. Defendants demanded arbitration against Wells Fargo Bank in its *individual* capacity not as a Securities Intermediary, the latter of which was the only capacity in which it was a party to the Liberty Financing Agreements. *See also* Wells Fargo's Opening Br. at 11-13. For its part, WFDTC was never a party to any Liberty Financing Agreement in any capacity. *Id.* at 11.

*Second*, Defendants lack privity and standing, which is a threshold requirement for both arbitration and litigation. While Defendants purport to bring their claims in the *Achenbach* Arbitration and now in this Court as "heirs and beneficiaries" of the Insureds' estates, they now define themselves and seek to oppose the Motion solely as "Trust Beneficiaries" of the Insureds' trusts. Of course, they may only refine themselves as "Trust Beneficiaries" to the extent the Insureds ever had a trust and to the extent the Defendants were actually named as beneficiaries to the trusts and received some benefits therefrom. But even that is not sufficient to support standing and capacity to sue on the alleged counterclaims because Defendants admit that they were not parties to any of the alleged Liberty Financing

Agreements, that they were not third-party beneficiaries to those Agreements, and not a single Defendant has been properly appointed by a probate court as a representative entitled to pursue legal claims on the estate's behalf, such as for breach of contract or breach of trust. Indeed, at least four of the Insureds (Jay Grimm, Sylvia Hankin, Abraham Malnik, and Paul Sifen) never even had a Liberty-financed insurance policy at all, so the Defendants allegedly representing those estates have *zero* claims whatsoever against Liberty or Wells Fargo. Plus, Defendants utterly fail to explain why a single "Trust Beneficiary" has the right or legal capacity to sue on behalf of and bind *all* other unidentified beneficiaries to the same trust. If Defendants have standing, then all other beneficiaries are indispensable parties.

*Third*, as Defendants concede, Georgia law precludes arbitration of claims that are barred by their applicable statutes of limitations. To the extent the counterclaims are expired, the Court must abate the arbitration.

Georgia law empowers the Court to preclude arbitration of expired claims involving incorrect parties. O.C.G.A. § 9-9-5(a). Having asserted expired claims in arbitration on behalf of beneficiaries who lack standing and privity against the wrong respondents does not give the Defendants the right to pursue those same inherently flawed claims in court instead. To the extent any Counterclaim survives, it must still proceed in arbitration, which is why the Counterclaims make no sense whatsoever

in this summary proceeding. This Court should never be required to resolve the merits of the claims Defendants chose to bring in arbitration. Either they are barred, or they should proceed only in arbitration. In either case, they should be dismissed.

## II. ARGUMENTS

### A. Defendants Utterly Fail to Carry Their Burden of Demonstrating Their Legal Capacity and Standing to Pursue the Counterclaims

On the penultimate page of their Opposition, Defendants assert that they "obviously" have standing to enforce their own rights as alleged beneficiaries of the Trusts. Opp. Br. at 53. The Opposition fails, however, to cite a single authority of any kind—statutory or case law—from Georgia or any other jurisdiction where the Insureds' estates or Defendants are located to support the argument that Defendants have either the legal capacity or standing to raise and maintain any of the Counterclaims simply because they define themselves as "Trust Beneficiaries."

As an initial matter, a trust beneficiary—a person identified in a trust agreement as being entitled to receive some disbursed benefit from the Trust res—does not have the legal capacity to sue *on behalf of a decedent's estate or other beneficiaries*. Only a personal representative of an estate who has been properly appointed as the estate's legal representative has such authority. That is the law in Georgia and in every jurisdiction where the Insureds' estates and Defendants reside. *See* Wells Fargo Motion at 18-19 (citing O.C.G.A. § 53-7-45 and equivalent statutes and cases from each jurisdiction).

Indeed, standing is a threshold issue requiring sufficient proof prior to and independent of the merits of a party's claims. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."). Of course, that burden of proving standing to maintain a claim rests with the party asserting the claim. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000) ("[E]ach element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, while general allegations in a complaint may be sufficient to make a prima facie showing of standing, when challenged, sufficient facts and evidence in support of the assertion must be provided. *Id.*

Defendants make no allegation and certainly present no evidence that any of them has been appointed as personal representative of their respective Insured's estate, or that they have been assigned the right to bring and maintain claims for the estate by any other proper representative. Similarly, they make no assertion and equally present no evidence that one Trust Beneficiary could bring suit individually when a number of Trust Beneficiaries would be entitled to the same alleged recovery. Not only does this bar arbitration, but it also precludes Defendants from pursuing the Counterclaims in this forum instead, including those alleging that the

Liberty Financing Agreements and related policies are *void ab initio*, that Wells Fargo breached any contract or trust signed by the Insureds, or that the estates suffered RICO violation damages.

In response, the *only* argument that Defendants make is that they have standing to bring claims to redress harms that they individually suffered as Trust Beneficiaries. At the most basic level though, and without making any admissions about other Defendants, at least four of the Defendants—Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen—cannot make any allegation, much less offer any evidence, that they were ever a "Trust Beneficiary" of any Liberty Program Trust. *See* Liberty Motion at 19-20; Liberty Reply at 14 fn. 18 ("It is Defendants' burden and Rule 11 obligation to predicate their claims on facts, not surmise or speculation."); Wells Fargo Motion at 9. Defendants are just grasping at straws and the Opposition openly acknowledges that these parties have no viable claims. Defendants confess that the LLC documents they attach to the Opposition are insufficient to show that these four Insureds were ever issued a Liberty Program insurance policy or that the Defendants were ever Trust Beneficiaries of a Liberty Program Trust. Opp. Br. at 30 ("If it turns out that these LLCs did not apply for and obtain policies on the lives of these four insureds, then these claims will be resolved without the need for this Court to intervene.") Unfortunately, the need for the Court to intervene has already arrived. Defendants admit that they have no evidence that

any of these four Insureds was ever issued a Liberty Program insurance policy, or that the four Defendants supposedly representing them were ever "Trust Beneficiaries" of a Liberty Program Trust. These Defendants' counterclaims should be dismissed now.

For the others, it is not sufficient for the Defendants to just label themselves as "Trust Beneficiaries." As discussed above, Defendants fail to refute the fact that the claims rest with the estates' representatives, not with each separate beneficiary. Defendants admit that the Liberty Financing Agreements expressly state that no third-party beneficiaries were intended to be created or have any rights under the agreements. Defendants cannot create standing to void the Liberty Financing Agreements or recover damages for their alleged breach given that the Insureds, who were the parties to those Agreements, expressly agreed that no persons (including Defendants) were intended beneficiaries with any rights thereunder. *See* Financing Agreements, § 7.08 (E.g., Counterclaims Ex. D); Wells Fargo Motion at 21. The fact that Defendants *may* have been named by an Insured in a trust is not the equivalent of being a third party beneficiary to an alleged Liberty Financing Agreement, and Defendants offer no authority to the contrary.

In any case, as Wells Fargo stressed in its Motion, a party's "[s]tatus as a third-party beneficiary does not imply standing to enforce every promise within a contract, including those not made for that party's benefit." *Archer W. Contractors, Ltd. v.*

*Est. of Pitts*, 292 Ga. 219, 226–27 (2012).

> [I]n order for a third party to have standing to enforce a contract[,] it must appear clearly from the contract that it was intended for the benefit of the third party. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient. Unless such an intention is shown on the face of the contract, defendant is under no duty to the third party and consequently plaintiff acquires no right as the third-party beneficiary.

*Satilla Community Svc. Bd. v. Satilla Health Svcs.,* 275 Ga. 805, 810 (2002).

Finally, even if Defendants could show standing to pursue discrete harms they suffered as "Trust Beneficiaries," they do not even attempt to refute the argument that the counterclaims should still be dismissed for failure to include all other beneficiaries as indispensable parties. *See* Fed. R. Civ. P. 12(b)(7) & 19; Wells Fargo Motion at 19-20 fn. 4.

**B. Defendants May Not Litigate Counterclaims that They Lack Standing and Privity to Arbitrate**

Defendants' Opposition takes the head-scratching position that, despite having submitted their claims to arbitration, the Trust Beneficiaries are not required to arbitrate their Counterclaims. According to Defendants, they only "commenced the Arbitration based on the belief that Plaintiffs would claim that arbitration is mandatory." Opp. Br. at 22. But once Wells Fargo and Liberty filed their complaints in the Georgia state court, Defendants supposedly realized the error of their belief and "have since made clear their preference to litigate their claims before this Court"

by suspending their own arbitration. *Id.* at 23.

That argument defies logic. Defendants' "misapprehension" is not just irrelevant, it never truly existed. They expressly chose arbitration based on a belief that it would provide some advantage in light of the three other arbitrations they identify in the Statement of Claim. *See* Statement of Claim, ¶¶ 2-5 & fns. 1-2. Defendants are bound by and may not now opt out of the arbitration clause and the parties' election to arbitrate. Liberty Motion at 19-20; Liberty Reply at 4-7.

Nor can Defendants now attempt to avoid arbitration by expanding the scope of their claims or adding new counterclaims. The arbitration provision broadly covers "[a]ll controversies or disputes arising out of or in connection with" the Financing Agreements. Counterclaims Ex. D, § 7.11. It therefore applies to Defendants' new Sixth Counterclaim for Breach of Trust against Wells Fargo Bank for the same reasons it applies to the STOLI/insurable interest, breach of contract, and RICO counterclaims that Defendants insist somehow exceed the scope of the arbitration provision. *See* Liberty Reply at 7-9; *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 685 S.E.2d 304, 308 & 310 (2009) (holding that, "[i]n enacting the GAC, the General Assembly established a clear public policy in favor of arbitration" and that alleged tort and strict liability claims fell within the scope of the at-issue contract's broad arbitration provision because the "gist of the lawsuit concern[ed] the damage [plaintiff] suffered" related to the alleged contract that governed the

parties' transaction (internal quotation omitted; citing *Haynes v. Fincher*, 241 Ga. App. 179, 181 (1999))); *see also Volt Info. Sci., Inc. v. Board of Trustees. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (holding that state law governs the interpretation of the scope of contractual arbitration agreements, and that the FAA supplies a strong presumption in favor of arbitrability).

### C. Defendants Counterclaims Against WFDTC and Against Wells Fargo Bank Individually are Subject to Dismissal for the Same Reasons

Defendants agree that neither WFDTC nor Wells Fargo Bank individually was a party to any of the Liberty Financing Agreements. Opp. Br. at 50-52. Defendants must therefore concede that at least their Fifth Counterclaim for alleged Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing concerning the Financing Agreements must be dismissed. Not only do Defendants lack the legal capacity and standing to assert those claims for the estates, the claims fail as a matter of law because neither WFDTC nor Wells Fargo in its individual capacity (as opposed to its limited capacity as Securities Intermediary) can be sued for breaching an agreement to which they were not a party. O.C.G.A. § 9-2-20(a); *see also* Wells Fargo Opening Br. at 11-13 (citing *Envision Printing, LLC v. Evans*, 336 Ga. App. 635, 637 (2016) and *Allied World Assurance Co., Ltd. v. Bank of Utah*, No. 217CV01188RJSJCB, 2023 WL 1785700, at *8 (D. Utah Feb. 6, 2023)); *accord Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828, 714 (2011).

Other than the new Sixth Cause of Action for Breach of Trust which is alleged

solely against Wells Fargo Bank, the only two counterclaims that Defendants argue are applicable to WFDTC and Wells Fargo in its individual capacity are the STOLI lack of insurable interest and wagering claims, and RICO. Wells Fargo expressly reserves the rights to present full defenses against the merits of those claims if necessary either in arbitration or in this Court. They should, however, be dismissed now as having expired and being barred by the applicable statutes of limitations. *See* Liberty Motion at 22-25; Liberty Reply at 10-13 (no equitable tolling for fraudulent concealment).

But in any event, Defendants' cannot use their own admission that the Trust Beneficiaries are not signatories to the Liberty Financing Agreements (*see* Opp. Br. at 19) to avoid arbitration *if* they first demonstrate their own standing and legal capacity to sue as supposed "Trust Beneficiaries" and demonstrate that all other Trust Beneficiary indispensable parties are also included.

### D. The New Sixth Counterclaim Against Wells Fargo Bank for Breach of Trust is Time-Barred

Defendants' only argument why its Sixth Counterclaim for alleged Breach of Trust against Wells Fargo Bank did not expire long ago is because the statute of limitations was tolled because of Wells Fargo Bank's alleged "fraud and intentional concealment of facts." *See* Opp. Br. at 37-42. Neither the Counterclaims nor the Opposition, however, identify any specific facts that Wells Fargo had a duty to disclose but concealed from *the Insureds* that somehow prevented *the Insureds* from

reasonably discovering the basis of the claims at any time before or after the policies were issued or the annual reports were provided. *Edmonds* v. *Bates*, 178 Ga. App. 69, 71-72 (1986) (no tolling where plaintiff did not allege fraud with particularity that prevented him from discovering claim); *Freese* v. *Bank of America*, 2010 WL 11646973 at * 7 (N.D. Ga. Jun. 8, 2010) ("Plaintiff has filed to satisfy Rule 9(b) by describing the specific wrongdoing committed by each defendant that warrants equitable tolling."); s*ee also* Liberty Reply at 10-13 & fns. 12-14.

Nothing was hidden. The Insureds had copies of all of the Trust documents, and Wells Fargo provided the Benefits Letters and annual reports that forecasted the amounts that would be due and payable upon the Insured's death. That is not, as Defendants assert, extrinsic evidence. On the contrary, documents that Defendants attached to and incorporated into the Counterclaims reference the reports and are properly considered on a motion to dismiss. *See, e.g.,* TERMS AND CONDITIONS FOR LIBERTY PREMIUM FINANCE PROGRAM FINANCING AGREEMENT AMONG LIBERTY ONE FUNDING TRUST, THE LLC AND THE INSURED, § 1.08 (attached as Ex. D to Counterclaim at CM/ECF Doc. 16-4 pg. 12 of 40); *see also* Counterclaim ¶¶ 213-216 (admitting that the Financing Agreement transactional documents included an acknowledgment and waiver of the "'potential conflict of interest' between Wells Fargo Bank acting as Trustee for the Irrevocable Trusts and the various other capacities in which Wells Fargo Bank was serving its

true master, Liberty."). If the Insureds had any concerns about the amount of the payments their beneficiaries would receive, they should have raised them when they were provided all such information year-after-year. They each had all the information needed to reasonably suspect the existence of a claim *if one existed*.

While Defendants assert that the "Trust Beneficiaries" did not receive the annual reports, there is no reason they should have. The Insureds received the annual reports when they were still alive, in some cases for upwards of 15 years, but in all cases for more than 6 years before their deaths.

In its Opening Brief, Wells Fargo established why the 6-year statute of limitation for this claim was statutorily-reduced to 2 years because of the provision of the Benefits Letters and annual reports undeniably provided to the Insureds. But even if the 6-year statute of limitations applied, the Benefits Letters and annual reports were still mean the Insureds "reasonably should have discovered" the basis of their claims long ago before their deaths. The fact that the Trust Beneficiaries claim that they did not actually discover the probable basis for their alleged claims until after being contacted by their counsel does not eliminate the fact that the Insureds were or reasonably should have been well-aware of the claims (if the claims existed at all) at the time they signed the Agreements, but at the latest, when they received the first annual Benefits Letter and report. *See Mayfield v. Heiman*, 317 Ga. App. 322, 326 (2012). The question is not whether the statute should be

equitably tolled, but rather, when *the Insureds* knew or had a reasonable basis to investigate and know of their potential claims. *See, e.g., Hewitt Assocs., LLC v. Rollins, Inc.*, 308 Ga. App. 848 (2011) (a claimant asserting tolling based on fraud must adequately plead and prove the actual fraud, including details of the dates and contents of the misrepresentations that precluded earlier discovery). That was when they signed the Liberty Financing Agreement, but at the latest, when they received their first annual Benefits Letter report. The Trust Beneficiaries' attempt to plead around the obvious statute of limitations with conclusory and generic assertions of fraud cannot save this counterclaim.

## III. CONCLUSION

For each of the reasons set forth in Wells Fargo's and Liberty's respective Motions to Dismiss, each of Defendants' seven Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Any remaining counterclaims not subject to the AAA arbitration that Defendants chose to commence should be stayed pending the resolution of that arbitration.

Respectfully submitted this 8th day of May, 2024.

## CERTIFICATION

The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font with a 1 inch top margin in accordance with L.R. 5.1B, N.D. Ga.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **WELLS FARGO'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** upon all parties to this matter by electronically filing a copy of same with the Court's electronic filing system, which will automatically send an electronic copy to all counsel of record.

This 8th day of May, 2024.

*/s/Catherine G. Lucas*
Catherine G. Lucas
Ga Bar. No. 567369