**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LIBERTY ONE FUNDING TRUST, LIBERTY TWO FUNDING TRUST, WELLS FARGO BANK, N.A., and WELLS FARGO DELAWARE TRUST COMPANY, N.A.,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN ACHENBACH, NANCY BELSER, ANDREW COSTANZA, ANDREW DARROW, DAVID DARROW, JONATHAN DARROW, DEAN FLOCK, JAY GRIMM, JR., ROBERT KRAKOVITZ, MOSHE MALKA, LEON MALNIK, BARRY SEPTIMUS, AND PHYLLIS SIFEN,<br><br>Defendants. | Civil Action No. 1:23-cv-5483-MLB |
| AND RELATED COUNTERCLAIMS. | |

**AMENDED JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**[1]

[1] By Order dated February 6, 2024 [Doc. 40], the Court granted the parties' Consent Motion to Consolidate *Wells Fargo Bank, N.A., et al. v. Achenbach, et al.*, Case No. 1:23-cv-5825-MLB (the "*Wells Fargo* case") into this action, *Liberty One Funding Trust, et al. v. Achenbach, et al.*, Case No. 1:23-cv-5483-MLB (the "*Liberty* case"). Per the Court's Order, the *Wells Fargo* case has been administratively closed. The parties from the *Wells Fargo* case have been added to the caption in the *Liberty* case as captioned above.

Plaintiffs / Counterclaim-Defendants Liberty One Funding Trust and Liberty Two Funding Trust (collectively, "Liberty"), Plaintiffs / Counterclaim-Defendants Wells Fargo Bank, N.A. and Wells Fargo Delaware Trust Company, N.A. (collectively, "Wells Fargo," and together with Liberty, "Plaintiffs"), and Defendants / Counterclaimants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Dean Flock, Jay Grimm, Jr., Robert Krakovitz, Moshe Malka, Leon Malnik, Barry Septimus, and Phyllis Sifen (collectively "Defendants" or "Trust Beneficiaries"), hereby file, pursuant to the Court's Order dated May 30, 2025, Local Rule 16.2, and Federal Rule of Civil Procedure 26(f), their Amended Joint Preliminary Report and Discovery Plan, showing the Court as follows:

**1. Description of Case:**

**(a) Describe briefly the nature of this action, and summarize the facts of this case. The summary should not be argumentative nor recite evidence.**

**<u>Plaintiffs' Response:</u>**

The Liberty premium finance programs allowed individuals to obtain life insurance on their own lives using non-recourse financing provided by Liberty.

Through these programs, Dana Belser, Angelo Costanza, Stanley Darrow, Helen Wilkenfeld, Walter Achenbach, Victor Malka, and Henry Flock (collectively, the "Insureds"), who were (or represented themselves to be) high net worth

individuals, entered into Financing Agreements with either Liberty One Funding Trust or Liberty Two Funding Trust and with Wells Fargo Bank, N.A., as Securities Intermediary. The Financing Agreements provided that Liberty would provide financing for the premiums for life insurance on the Insureds. In exchange, the Insureds agreed that Liberty would be repaid out of the proceeds of the insurance policies after the Insureds' passing. In the agreements, the Insureds certified that they obtained advice from independent legal and financial advisors about the transaction. The Financing Agreements set forth explicit formulas for calculating the amounts due to Liberty; those are the amounts Liberty received. All together, the Insureds invested negligible amounts of their own, and their designated beneficiaries collectively received over $1.8 million in death benefits when the Insureds passed away, for most of whom it has been more than a decade.

Defendants Brian Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Moshe Malka, Barry Septimus, and Dean Flock (together, "Liberty Defendants") contend that they are the individual heirs of deceased Insureds who were designated by the Insureds as insurance policy beneficiaries. Liberty did not enter into Financing Agreements or secure insurance policies for any individuals associated with Defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, and Phyllis Sifen (the "Stranger Defendants").

The Liberty Defendants received all of the benefits of the bargains the

Insureds made when they contracted with Liberty. Now, despite having received what they were promised and having invested no money of their own, after many years, Defendants have abruptly pursued these claims, arguing that Liberty should not receive the stipulated amounts agreed to in the Financing Agreements or even a return of the premiums that Liberty advanced in these financing transactions. Specifically, Defendants have asserted claims (1) that the Insureds' insurance policies lacked insurable interest, rendering them and the Financing Agreements as "void ab initio" wagers and (2) for violation of RICO by (a) engaging in "an illegal gambling and human life wagering scheme," consisting of procuring stranger-oriented life insurance policies and (b) engaging in mail and wire fraud, specifically "concealing the true terms of the Financing Agreements, making intentional misrepresentations regarding the Program, and arbitrarily abusing the discretion given to them under the terms of the Financing Agreements." Defendants also assert a claim for Breach of Trust solely against Wells Fargo Bank, N.A. The above purported claims arise from or in connection with the Financing Agreements and are directed at Plaintiffs' relationship with and conduct toward the Insureds pursuant to the Financing Agreements.

Defendants' standing, if any, arises solely from their role as personal representatives or administrators of the Insureds' estates, or in the case of the Breach of Trust claim against Wells Fargo, N.A., on the basis that Defendants are the

purported beneficiaries of the Irrevocable Trusts the Insureds created in connection with the Finance Agreements. The Insureds, however, agreed to arbitrate all claims "arising out of or in connection with" the Financing Agreements. Plaintiffs therefore contend that Defendants' claims should be arbitrated and moved to dismiss on that basis; the motion was denied. Plaintiffs have not yet challenged the merits of Defendants' claims.

**Defendants' Response:**

Defendants, also referred to as the Trust Beneficiaries, are the beneficiaries of various irrevocable Georgia trusts (the "Irrevocable Trusts") that were used by Liberty and Wells Fargo to carry out a stranger-originated life insurance ("STOLI") scheme. Through their STOLI scheme, Liberty and Wells Fargo illegally wagered on the lives of senior citizens who were the grantors of the Irrevocable Trusts and who served as the insureds in connection with multi-million dollar life insurance policies (the "Policies") that were procured by Liberty and Wells Fargo, for their own benefit. In doing so, Liberty and Wells Fargo not only collected illegal human life wagering proceeds that should have been paid to the Trust Beneficiaries, as the beneficiaries of the Irrevocable Trusts, but Wells Fargo (the trustee of the Irrevocable Trusts) breached its fiduciary duties to the Trust Beneficiaries. Liberty and Wells Fargo otherwise engaged in a pattern of racketeering, including mail and wire fraud, all of which caused direct harm to the Trust Beneficiaries.

The underlying STOLI program was funded by Credit Suisse, among others. It operated for two decades with the help of Wells Fargo through two shell Delaware trusts (*i.e.*, Liberty One Funding Trust and Liberty Two Funding Trust). Between 2004–2006, Defendants orchestrated the Liberty Premium Financing Program (the "Program"), through which the Liberty Defendants procured multi-million dollar life insurance Policies on the lives of elderly insureds and guaranteed themselves 90%+ of the policies' death benefits no matter when the insureds passed away or how much Liberty paid in premiums on the Policies. Plaintiffs attempted to disguise the STOLI Program as legitimate premium financing, but in reality they were operating a large illegal human life wagering scheme targeting Georgia.

To guarantee itself over 90% of the Policies' death benefits, Liberty had the insureds create LLCs to serve as the owner and beneficiary of each Policy. Wells Fargo was the Manager of the LLCs. Liberty also had the insureds create the Irrevocable Trusts to serve as Members of the LLCs. Wells Fargo was the trustee of each of the Irrevocable Trusts. At all times, Wells Fargo acted at the direction of the Liberty Plaintiffs, not in the interests of the Insureds, the LLCs, the Irrevocable Trusts, or the Trust Beneficiaries. Finally, Plaintiffs had the Insureds and the LLCs (through Wells Fargo) sign "Financing Agreements" that guaranteed the Liberty Plaintiffs 90%+ of each Policies' death benefit.

At issue in the pleadings at present are eleven virtually identical transactions

involving virtually identical Irrevocable Trusts, LLCs, and STOLI policies. Following the Court's rulings on motions to dismiss the Trust Beneficiaries counterclaims, the remaining counterclaims are for declaratory relief and (1) the life insurance policies are void *ab initio* wagers and the Trust beneficiaries are entitled to recover the full death benefits; (2) violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (3) against Wells Fargo Bank, N.A. for breach of trust.

**(c) The legal issues to be tried are as follows:**

**Plaintiffs' Response:**

- Whether the Defendants have standing to assert their claims,
- Whether Defendants' claims are timely,
- Whether the life insurance policies lacked an insurable interest at inception,
- Whether Plaintiffs committed RICO violations, and
- Whether Wells Fargo breached its fiduciary duties as trustee,
- Plaintiffs reserve the right to assert on appeal that Defendants' claims must be arbitrated.

**Defendants' Response:**

- Whether the life insurance policies lacked an insurable interest at inception,

- Whether Plaintiffs committed RICO violations,
- Whether Wells Fargo breached its fiduciary duties as trustee, and
- Trust Beneficiaries reserve the right to appeal their claims related to the Financing Agreements that were dismissed by the Court's January 27, 2025 Order.

(d) **The cases listed below (include both style and action number) are**:

(1) Pending Related Cases:

None.

(2) Previously Adjudicated Related Cases:

None.

**2. This case is complex because it possesses one or more of the features listed below (please check):**

| | | |
|---|---|---|
| X[2] | (1) | Unusually large number of parties |
| ______ | (2) | Unusually large number of claims or defenses |
| ______ | (3) | Factual issues are exceptionally complex |
| X[3] | (4) | Greater than normal volume of evidence |
| X[4] | (5) | Extended discovery period is needed |
| ______ | (6) | Problems locating or preserving evidence |
| ______ | (7) | Pending parallel investigations or action by government |
| ______ | (8) | Multiple use of experts |
| ______ | (9) | Need for discovery outside United States boundaries |
| ______ | (10) | Existence of highly technical issues and proof |
| ______ | (11) | Unusually complex discovery of electronically stored |

[2] Entered by Plaintiffs.

[3] Entered by Trust Beneficiaries.

[4] Entered by Trust Beneficiaries.

information

**Joint Response:**

Trust Beneficiaries have filed counterclaims which require substantial discovery from both Plaintiffs and third parties such as Credit Suisse.

**3. Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Liberty:**

Thorn Rosenthal, Esq. (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000
trosenthal@cahill.com

Terry R. Weiss, Esq.
Ga. Bar No. 746495
DUANE MORRIS LLP
1075 Peachtree Street, NE, Suite 1700
Atlanta, GA 30309
(404) 253-6900
trweiss@duanemorris.com

**Wells Fargo:**

Jonathan P. Hersey, Esq. (*pro hac vice*)
K&L GATES LLP
1 Park Plaza, 12th Floor
Irvine, CA 92614
(949) 253-0900
Jonathan.hersey@klgates.com

Terry R. Weiss, Esq.
Ga. Bar No. 746495
DUANE MORRIS LLP
1075 Peachtree Street, NE, Suite 1700
Atlanta, GA 30309
(404) 253-6900
trweiss@duanemorris.com

**Defendants:**

Gregory J. Star (*pro hac vice*)
COZEN O'CONNOR
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-4110
Email: gstar@cozen.com

Saskia Olczak
Georgia Bar No. 686983
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-2099
E-mail: solczak@cozen.com

**4. Jurisdiction:**

Is there any question regarding this Court's jurisdiction?

___Yes ___X___No[5]

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss

[5] There is not presently any question regarding the Court's jurisdiction, which is premised on diversity jurisdiction and federal question jurisdiction. After the Counterclaims are amended and the new Defendants identified, Plaintiffs reserve the right to challenge federal jurisdiction if there no longer exists diversity.

separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5. Parties to This Action:**

(a) The following persons are necessary parties who have not been joined:

**<u>Plaintiffs' Response:</u>**

Plaintiffs do not have full visibility into the roles of the additional purported beneficiaries that will be added by Defendants. Where, as here, a lender advances funds for premiums under a life insurance policy, the only parties with standing to challenge receipt by the lender of death benefit proceeds in excess of the amount due under the loan are the estate's legal representative, executor, or administrator. *Warnock* v. *Davis*, 104 U.S. 775 (1881). The same is true for Defendants' RICO claims: their RICO claims derive from alleged wrongs perpetrated upon the Insureds and may be asserted only by successors of the Insureds. *See Johnson Enters. of Jacksonville, Inc*. v. *FPL Grp., Inc*., 162 F.3d 1290, 1318–1319 (11th Cir. 1998) (holding that misrepresentations made to third parties did not constitute predicate acts of fraud under RICO because the plaintiff did not suffer a direct injury); *Beck* v. *Prupis*, 162 F.3d 1090, 1097 n.12 (11th Cir. 1998) ("[T]he detrimental effects of racketeering activity directed toward a third party. . . are not actionable under RICO."). The representatives of the Insureds' estates are thus necessary parties, and information identifying such parties is solely in the Defendants' possession.

**Defendants' Response:**

The Trust Beneficiaries disagree with Plaintiffs' contention regarding the proper parties to assert the remaining claims and believe the Plaintiffs previously raised this issue in their motions to dismiss, which was reject by the Court in its January 27, 2025 Order.

During the Parties' recent meet and confer, the Parties agreed to realign the parties such that Defendants (the Trust Beneficiaries), who are seeking relief here, will become Plaintiffs, and the Plaintiffs will become Defendants. A joint motion to realign the parties is being filed contemporaneously with this Amended Joint Preliminary Report and Discovery Plan.

Per the Parties' agreement, on May 30, 2025, the Trust Beneficiaries' counsel identified additional insureds whose trust beneficiaries will be added to an amended complaint. In turn, by June 27, 2025, Wells Fargo will produce agreed-upon documents concerning each insured presently named in the action. And by July 7, 2025, Wells Fargo will produce agreed-upon documents concerning those additional insureds provided by the Trust Beneficiaries on May 30, 2025.[6]

The Parties further agreed that the Trust Beneficiaries will file an Amended Complaint by July 18, 2025, which will not add new claims for relief, but will

[6] For the avoidance of doubt, the agreed-upon documents that Wells Fargo will produce are not in lieu of any other discovery requests that the Trust Beneficiaries propound upon Wells Fargo or Liberty.

include additional trust beneficiaries concerning new insureds and remove any counts struck by the Court's January 27, 2025 Order. Liberty and Wells Fargo agreed that they will not seek to compel arbitration as respects the Trust Beneficiaries, but Liberty and Wells Fargo reserved the right to bring a motion to dismiss on a basis not previously addressed by the Parties—nonetheless, neither Liberty nor Wells Fargo will seek to stay discovery pending any such motion.

(b) The following persons are improperly joined as parties:

N/A

(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

N/A

(d) The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6. Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.

(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:

**Plaintiffs' Response:**

N/A

**Defendants' Response:**

As discussed *supra*, the Parties agreed to switch their roles from Plaintiffs to Defendants and vice versa based on the nature of the claims at issue. Further, as discussed *supra*, the Parties agreed that the Trust Beneficiaries will file an Amended Complaint by July 18, 2025, which will not add new claims for relief, but which will include additional the Trust Beneficiaries concerning other insureds and remove any counts struck by the Court's January 27, 2025 Order—this is dependent on Wells Fargo producing the necessary documents to the Trust Beneficiaries on the dates provided above.

(b) Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

As noted above, the Parties have agreed that the Trust Beneficiaries shall have until July 18, 2025 to amend their claims, subject to Wells Fargo producing the agreed-upon documents to the Trust Beneficiaries pursuant to the agreed-upon schedule.

**7. Filing Times For Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b) *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c) *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony*: Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

The Parties have agreed to the attached Joint Proposed Scheduling order outlined below.

**8. Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).

The Parties exchanged Initial Disclosures on March 8, 2024.

**9. Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

**Joint Response:**

The parties do not request a scheduling conference with the court at this time.

**10. Discovery Period:**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight

months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

**Plaintiffs' Response:**

- The identities of the Insureds' estates and personal representatives;
- The locations of the Insureds when they procured their insurance policies;
- The Insureds' net worth, independent advisors, and financial sophistication;
- Communications by and with the Insureds and their representatives regarding the Liberty program;
- The calculation and payment of death benefits to the Insureds' beneficiaries;
- When Defendants had constructive knowledge of their claims.

**Defendants' Response:**

- The claims and allegations in Plaintiffs' Complaints;
- Plaintiffs' intent with respect to the at-issue transactions and life insurance policies;
- Plaintiffs' calculations regarding the balances, total amount due, interest, or any other charges; and

- The identities of the Insureds' heirs and beneficiaries named in the applicable Irrevocable Trusts.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

**Joint Response:**

Given the number of parties, volume of expected evidence, and the need for third-party discovery, the Parties request that the Court enter the attached Joint Proposed Scheduling Order, which concludes discovery on March 6, 2026.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

**Joint Response:**

The parties do not suggest any changes should be made to the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules.

(b) Is any party seeking discovery of electronically stored information?

__X__ Yes ____ No

If "yes,"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The Parties agree that electronically stored information will be produced in

accordance with the Federal Rules of Civil Procedure.

**Plaintiffs' Position:**

**Liberty**: Given that the insurance policies were procured twenty years ago, and the death benefits for some Defendants were paid out as long as thirteen years ago, Liberty has retained very few relevant transaction files, as it has made Defendants aware. Nonetheless, Liberty has offered to perform electronic searches of the names of the Defendants, the Insureds, and their insurance policy numbers.

**Defendants' Position:**

During the Parties 26(f) conference, Defendants requested for Plaintiffs to identify potential search terms, custodians, and date ranges as well as to identify the document preservation procedures that have been put in place to prevent spoilation of evidence. If Plaintiffs do not adequately respond in due course, Defendants will seek the appropriate relief.

(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

The Parties will produce electronically stored information in reasonably usable form. Unless agreed otherwise by the Parties, reasonably usable form will be single-page TIFF-image format with extracted text (or OCR text for documents that exist in a format in which extracting text is not possible) and associated metadata to

be agreed upon in an ESI Protocol. If the Requesting Party, for good cause explained in the request, seeks production in native format of specifically identified ESI that was produced originally in TIFF-image form, the Producing Party will respond reasonably and in good faith to any such request and reasonable requests will not be declined.

Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), and audio/video multimedia files that have been identified as responsive will be produced in native format to the extent practicable.

Any Party seeking to use files produced in native format will do so subject to the following: The original production number and confidentiality designation, if any, will be stamped on the first page of any TIFF image or hardcopy document representing the original native-format file. Use of a file other than an electronic spreadsheet (*e.g.*, Excel) in native format, or use of a TIFF image or hardcopy document representing the original native-format file will constitute a representation that the file being used is both an accurate and complete depiction of the original native-format file. Use of portions of an electronic spreadsheet (*e.g.*, Excel) in native format will constitute a representation that the file being used is an accurate depiction of the original native-format file but need not constitute a representation that the portion being used is a complete file.

**12. Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

Contemporaneously with the filing of this Amended Joint Preliminary Report and Discovery Plan, the Parties will submit a Stipulated Protective Order for the Court's consideration.

**13. Settlement Potential:**

(a) Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on February 3, 2025, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For Liberty: CAHILL GORDON & REINDEL LLP

*/s/ Thorn Rosenthal*
Thorn Rosenthal

For Wells Fargo: K&L GATES LLP

*/s/ Jonathan P. Hersey*
Jonathan P. Hersey

For Defendants: COZEN O'CONNOR

*/s/ Gregory J. Star*
Gregory J. Star

(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(______) A possibility of settlement before discovery.
(______) A possibility of settlement after discovery.
(______) A possibility of settlement, but a conference with the judge is needed.
(__X__) No possibility of settlement.

(c) Counsel (_______) do or (__X_____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is _____.

**14. Trial by Magistrate Judge:**

The Parties do not consent to having this case tried before a magistrate judge of this Court.

For Liberty: CAHILL GORDON & REINDEL LLP

*/s/ Thorn Rosenthal*
Thorn Rosenthal

For Wells Fargo: K&L GATES LLP

*/s/ Jonathan P. Hersey*
Jonathan P. Hersey

For Defendants: COZEN O'CONNOR

*/s/ Gregory J. Star*
Gregory J. Star

* * * * * * * * * * * * * *

## PARTIES' JOINT PROPOSED SCHEDULING ORDER

Upon review of the information contained in the Amended Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

Deadline to Amend Pleadings: **July 18, 2025**

Deadline for the end of fact discovery: **January 9, 2026**

Deadline to identify experts: **January 16, 2026**

Deadline for the end of expert discovery: **March 6, 2026**

Deadline to file dispositive motions: **April 17, 2026**

IT IS SO ORDERED, this ___________ day of _____________________, 2025.

____________________________________

UNITED STATES DISTRICT JUDGE