# EXHIBIT E – Provisionally Filed Under Seal

LORD BISSELL BROOK LLP
ATTORNEYS AT LAW

THE PROSCENIUM | SUITE 1900
1170 PEACHTREE STREET, NE | ATLANTA, GEORGIA 30309
404.870.4600 | 404.872.5547 FAX | WWW.LORDBISSELL.COM

August 25, 2004

Liberty One Funding Trust
c/o Wells Fargo Delaware Trust Company, as Georgia Trustee
400 Northridge Road
Suite 600
Atlanta, Georgia 30350

Re: Liberty Premium Finance Program Financing Agreement dated as of August 23, 2004 among Liberty One Funding Trust, Julius Neumann Georgia, LLC and Julius Neumann.

Dear Ladies and Gentlemen:

We have acted as special, Georgia counsel to (a) Julius Neumann Georgia, LLC, a limited liability company formed under the laws of the State of Georgia (the "***Borrower***"), and (b) Julius Neumann, an individual resident of the State of Georgia (the "***Insured***" and, together with the Borrower, the "***Relevant Parties***") in connection with the execution, delivery and performance by the Relevant Parties of the Financing Agreement dated as of August 23, 2004 (the "***Financing Agreement***") among Liberty One Funding Trust (the "***Lender***"), Borrower and Insured. We have not advised the Relevant Parties in the negotiations with respect to the transactions contemplated by the Opinion Documents (as such term is defined below), nor have we advised the Relevant Parties in connection with the Borrower's purchaser of the Policy (as defined below).

All capitalized terms used, but not defined, herein have the meanings ascribed to such terms in the Financing Agreement.

In connection therewith, we have reviewed originals or copies of the following documents:

(a) The Financing Agreement.

(b) The Insured's Consent dated as of August 17, 2004 made by the Insured in favor of the Lender.

(c) The Authorization for Disclosure of Protected Health Information dated as of August 3, 2004 made by the Insured in favor of the Lender.

(d) Each SPIA application form completed by the Insured.

(e) The Authorization and Direction to Provide Death Certificate dated as of August 3, 2004 made by the Insured in favor of the Lender.

(f) All other agreements and documents listed in the Closing Package (as defined in the Financing Agreement).

(g) The Articles of Organization of the Borrower, and Operating Agreement of the Borrower dated as of August 25, 2004 (the "Governing Documents").

(h) Certificates of public officials and representatives of the Borrower, if any.

(i) Statutes and other instruments and documents relied upon as a basis for the opinion hereinafter expressed.

The documents described in the foregoing clauses (a) through (g) are collectively referred to herein as the "***Opinion Documents***".

In our review of the Opinion Documents and other documents, we have assumed:

(a) The genuineness of all signatures.

(b) The authenticity of the originals of all the documents submitted to us.

(c) The conformity to originals of any documents submitted to us as copies.

(d) That each of the Opinion Documents and all other documents or certificates that are subject to this opinion or on which this opinion is based (i) have been properly authorized, executed and delivered by each of the respective parties thereto other than the Relevant Parties, (ii) have been properly executed and delivered by all parties by or through competent individuals having the legal capacity to do so, and (iii) is the legal, valid and binding obligation of each party thereto, other than the Relevant Parties, enforceable against each such party in accordance with its terms.

(e) That the certificates of public officials, the Insured, and the Manager, Special Manager and the Member of the Borrower, and agents thereof, are accurate with respect to the factual matters contained therein.

LORD BISSELL BROOK LLP
ATTORNEYS AT LAW



(f) That the Insured is an individual competent to execute, deliver and perform each of the Opinion Documents

We have not independently established the validity of the foregoing assumptions.

Whenever any opinion below is qualified as to the existence or absence of facts by the phrase "to our actual knowledge," such phrase indicates only that the lawyers of this firm substantively who are involved in the representation of the Relevant Parties in this transaction have no actual knowledge of the existence or absence of facts. Except to the extent expressly stated herein, we have not undertaken any independent investigation to determine the existence or absence of any such facts, and no inference as to our actual knowledge of the existence or absence of such facts should be drawn from the fact of our representation of the Relevant Parties.

The phrase "Georgia Insurance Laws" means (1) the insurance statutes of the State of Georgia, (2) the regulations promulgated by and the published bulletins of the Commissioner of Insurance of the State of Georgia, (3) the published, judicial decisions of the courts of the State of Georgia applicable to individual life insurance policies the purchase of which is solicited solely from a person in, and who is a resident of, the State of Georgia, that are purchased by a person resident in the State of Georgia, and that are issued by a life insurer authorized to transact life insurance in the State of Georgia, and delivered by such life insurer, to a resident of the State of Georgia, excluding local laws of the State of Georgia (*i.e.*, the statutes, ordinances, the administrative decisions and the rules and regulations of counties, towns, municipalities and special political subdivisions of, or authorities of quasi-governmental bodies constituted under the laws of, the State Georgia), which are not relevant to the insurable interest issue discussed herein, (4) the published, official opinions of the Georgia Attorney General, and (5) the laws of the United States of America that are, in our experience, normally applicable to the transactions of the type contemplated in the Opinion Documents, and we are expressing no opinion as to the effects of the laws of any other jurisdiction.

<u>Opinion Requested</u>

You have asked us whether, under the Georgia Insurance Laws as in effect on the date hereof, the Borrower will, on the date that the Policy is issued and delivered by the Insurer to the Borrower, have an insurable interest in the life of the Insured.

<u>Factual Assumptions and Statements</u>

For all purposes of the analysis and opinions provided herein we have assumed that the transaction to be effected pursuant to the Opinion Documents (the "Transaction") will be and occur as follows. Any deviations from the following description could alter the opinions contained herein.

**The Georgia Trust.** An individual, who is a resident of a state of the United States or the District of Columbia, whose life will be insured under the Policy (the "Insured"), will grant and create an irrevocable trust pursuant to the Georgia Trust Act, O.C.G.A. § 53-12-1, et seq., via the Irrevocable Georgia Trust Agreement (the "Georgia Trust") for the sole purpose of owning and operating, as the sole member, a single member, manager managed Georgia limited liability company (the "Borrower"), which is described in more detail below. Wells Fargo Bank, N.A., acting through its office located in Georgia, will be the sole Trustee (the "Trustee") of the Georgia Trust. The Trustee, in its capacity as the Manager will manage the administrative functions of the Borrower, while the Special Manager of the Borrower will manage, in accordance with Section 9 of the Borrower's Operating Agreement, the actions that may be taken at the option, election or in the discretion of the Borrower, including, without limitation, any amendment to any of the Financing Documents, as described in the Borrower's Operating Agreement. The beneficiaries of the Georgia Trust will be the descendants, per stirpes, of the Insured, the sole grantor of the Georgia Trust.

**The Borrower.** The Borrower will have its sole and principal place of business located in Georgia, acting through its manager (the "Manager"), Wells Fargo Bank, N.A., which will act in such capacity through its office located in Georgia. As provided in the Borrower's Operating Agreement, the Manager will perform all administrative functions of the Borrower. The Borrower will also have a Special Manager, who will not be related by blood or marriage to the Insured and who will perform certain discretionary functions on behalf of the Borrower as provided in Section 9 of the Borrower's Operating Agreement. Pursuant to the Borrower's Operating Agreement, the Borrower will apply for and purchase the Policy on the life of the Insured. The Borrower, acting through the Manager in Georgia, will sign and send the insurance application for the Policy (which will be an individual, non-variable life insurance policy) to the insurance agent, who represents the Insurer to which such insurance application is being made and is duly licensed in Georgia as a nonresident insurance agent authorized to sell life insurance and duly appointed as an insurance agent of the Insurer. We assume that a Georgia court or a federal court sitting in Georgia would find that the solicitation of the Policy did not occur in the Insured's state of residence such that the laws of such state of residence would govern the question of whether the Borrower has an insurable interest in the life of the Insured. Such insurance application will provide that the Grantor will be the Insured and will designate the Borrower as the sole beneficiary of the Policy. The Insurer will be a U.S. domiciled insurance company licensed to transact the business of life insurance in Georgia. If the Insurer determines that it will issue the Policy, the Insurer will issue the Policy for delivery in, and will deliver the Policy to the Borrower, in Georgia. The Insured, at his or her election, may cause the Policy to be purchased and finance the payment of the insurance premiums payable for the Policy by (1) becoming the Policy owner and using his or her own funds; (2) becoming the Policy owner and using a traditional collateralized financing structure whereby the Insured must use some of his or her own assets to

provide collateral to a lender who would make a loan the proceeds of which would be used to pay the insurance premiums; or (3) causing the Borrower to become the Policy owner and obtaining financing through the Financing Agreement. If the Insured elects to use the Financing Agreement, the Borrower will enter into the Financing Agreement with Liberty One Funding Trust (the "Funding Trust"), a Delaware statutory trust more fully explained below, and the Insured. Through the Financing Agreement, the Borrower may receive some current income as an advance of an additional loan against the death benefit payable under the Policy, or only receive the death benefit payable under the Policy, depending upon when the Insured dies and the maturity date of the amounts due thereupon under the Financing Agreement.

**The Funding Trust.** The Funding Trust, a Delaware Trust, will, as the lender, enter the Financing Agreement with the Borrower. Pursuant to the Financing Agreement, the Funding Trust will make advances to the Borrower for the purpose of funding insurance premiums on the Policy and to make fixed periodic payments to the Borrower, if the current income option is chosen by the Borrower (the "Advances"). The Borrower will collaterally assign the Policy and the proceeds thereof to the Funding Trust as security for the Borrower's repayment of the Advances to the Funding Trust. Upon the death of the Insured and the Policy's maturity, the Funding Trust will direct the payment of death benefits paid pursuant to the Policy to the Borrower after deducting amounts that the Borrower then owes to the Funding Trust under the terms of the Financing Agreement.

<u>Opinion</u>

The Georgia Insurance Code does not expressly address whether a Georgia limited liability company, the sole member of which is a Georgia trust created by an individual, has an insurable interest in the life of such individual, like at issue in the Transaction. As such, we have made a reasoned analysis of the Georgia Insurance Laws and have applied that analysis to form the opinion provided herein.

Whether an insurable interest exists in the context of the purchase of a life insurance policy is critical because, in the absence of a valid insurable interest, life insurance policies are unenforceable at law. <u>Splish Splash Waterslides, Inc. v. Cherokee Ins. Co., 307 S.E.2d 107 (Ga. App. 1983)</u>; <u>Georgia Life Ins. Co. v. Davis, 52 Ga. App. 464, 183 S.E. 640 (1936)</u>; <u>Wilson v. Progressive Life Ins. Co., 61 Ga. App. 617, 7 S.E.2d 44 (1940)</u>. O.C.G.A. Section 33-24-3 (e) states that "[a]ny personal insurance contract procured or caused to be procured upon another individual is void unless the benefits under the contract are payable to the individual insured or such individual's personal representative or to a person having, at the time when the contract was made, an insurable interest in the individual insured." Where a life insurance policy has been issued to a policy holder without an insurable interest in the life of the individual who is insured, the insurer is not liable on the life insurance policy but must repay to the person or persons who have paid the premiums all premium payments without interest. <u>Id.</u> As the Policy

will be (a) purchased by the Borrower, which will be formed and have its sole and principal place of business in the State of Georgia and wholly-owned by the Georgia Trust, the sole member of the Borrower, and (b) be issued and delivered to the Borrower in Georgia by the Insurer, Georgia law should govern this question.

Generally, there are two (2) forms of insurable interests in the life of an individual: (1) interests related by marriage or certain blood relationships and (2) interests that are recognized because of certain types of financial or pecuniary interests which support the continuation of the life of an individual. It is unquestionable that an individual has an insurable interest in his or her own life. O.C.G.A. § 33-24-3 (b). Generally, as between spouses, or individuals having a close blood relationship (e.g., parent, child or sibling), it is generally found that there is an insurable interest. See Couch on Insurance 3d, §41:18; See Bieter v. Decatur Fed. Sav. & Loan Ass'n, 150 S.E.2d 687 (Ga. 1966), overruled on other grounds (recognizing that Georgia Code of 1960 granted explicit insurable interest to spouse of insured); United Ins. Co. of Am. v. Hadden, 190 S.E.2d 638 (Ga. App. 1972) (holding that a brother qualifies for an insurable interest under the same statutory language set forth in Section 33-24-3(a)); see also National Life & Accident Ins. Co. v. Parker, 19 S.E.2d 409 (Ga. App. 1942). The general rule is that the determination of the existence an insurable interest is not based on the fact of the relationship alone but, instead, based on whether a person could expect to receive a pecuniary benefit through the continued life of the insured. See National Life & Acc. Ins. Co. v. Parker, 67 Ga. App. 1, 19 S.E.2d 409 (1942). See also O.C.G.A. Section 33-25-1 (defining a life insurance contract as a contract "whereby the insurer, for a consideration, assumes an obligation to be performed upon the death of the insured or upon the death of another in the continuance of whose life the insured has an insurable interest,…").

In Georgia, the statutory law defining insurable interest for personal insurance (which includes individual life insurance) is codified in O.C.G.A. Section 33-24-3. Under O.C.G.A. Section 33-24-3, the parties having an insurable interest in the life of an individual include (1) the individual himself or herself, (2) certain other individuals related by blood or marriage to the individual, and (3) other individuals or a corporation or partnership that possess a certain pecuniary interest in the life of another individual, either by contract (e.g., shareholder buy-sell agreement), creditor-debtor relationship, or by the insured being a director, officer or employee of the entity. O.C.G.A. § 33-24-3; See Bieter, 150 S.E.2d 687; Hadden, 190 S.E.2d 638; see also Parker, 19 S.E.2d 409.

Generally, the creation and use of a family wealth and estate planning entity, formed and controlled by an insured with an insurable interest in his or her own life, as the owner and beneficiary of a life insurance policy insuring the life of the insured should not impact the presence or absence of the requisite insurable interest under Georgia law. It is a well established practice that an individual may create a trust to purchase and hold a life insurance policy insuring his or her own life through what is commonly known as an irrevocable life insurance trust (an "ILIT"). The standard

structure is for the ILIT to purchase a life insurance policy on the insured with the ILIT being funded to pay the future insurance premiums required to keep the life insurance policy in force. An ILIT maximizes the benefit of the life insurance policy by ensuring that the life insurance policy will not be subject to federal and state estate taxes at the insured's death. Because the ILIT owns the life insurance policy, the proceeds and value of the insurance policy are not included in the taxable estate of the decedent. As the insured creates the ILIT, the ILIT has an insurable interest in the insured's life to support the purchase of the policy.

In addition, one Georgia statute implies that a trust has an insurable interest in the life of the grantor or settlor of the trust. See O.C.G.A. § 53-12-22.1(a). O.C.G.A. § 53-12-22.1(a) establishes an exception to the statutory, general rule that all express trusts must be in writing by providing that "...a trust that has or will have as its initial corpus a policy or policies of life insurance ...may be created by oral agreement of the settlor and the trustee...[,]" provided that the parties execute contemporaneous documents that identify the settlor, the trustee, the beneficiary, the general nature of the policy that will constitute the initial corpus of the trust, and whether the trust is irrevocable. See O.C.G.A. § 53-12-22.1(a)-(b). Thus, in effect, O.C.G.A. § 53-12-22.1 implicitly (i) recognizes that a trust may have, as its initial corpus, a policy or policies of life insurance, insuring the life of the settlor, and (ii) confirms that such a trust has an insurable interest in the life of the insured settlor. See O.C.G.A. § 53-12-22.1(a).

Accordingly, by analogy the Georgia Trust should have, on the date the Policy issued, an insurable interest in the life of the Insured, who is the sole grantor or settlor of the Georgia Trust. Because the Georgia Trust (a) should have an insurable interest in the Insured's life, (b) will be the sole member of the Borrower and (c) will be the Manager of the Borrower, the Borrower should also have an insurable interest in the life of the Insured.

In addition, under the Georgia Insurance Code, an individual whose life will be insured under a life insurance policy purchased by a person other than the insured or his or her spouse, but who has an insurable interest in the life of the insured, must consent in writing prior to the purchase of the life insurance policy. O.C.G.A. Section 33-24-6 (a). This requirement for prior written consent of the Insured to the Borrower's purchase of the Policy further evidences and documents the Insured's affirmative, voluntary participation in, and agreement to, the Borrower's purchase of the Policy.

If a dispute arises involving the Borrower's insurable interest in the Insured, a court will need to determine which state's insurable interest laws should properly govern the outcome of the dispute. Heirs of the Insured residing outside Georgia may challenge the Georgia receipt of death benefits under the laws of the Insured's residence (or perhaps elsewhere). The choice would most likely be between the laws of Georgia, the state whose laws the parties to the Policy chose to control their transaction, and the laws of the state in which the Insured resided.

LORD BISSELL & BROOK LLP
ATTORNEYS AT LAW



The ability of the parties to a contract to choose the governing law is typically limited in that most states will require that the state selected by the parties have a direct, real, substantial or significant relationship to, or connection with, the transaction or the subject matter of the contract. While the Borrower's Manager is located in Georgia, the Insured is resident in another jurisdiction. Nevertheless, delivery of the Policy to the Manager in Georgia is not insignificant or superficial. If the application of Georgia law were challenged, a court deciding a conflict of law issue would be guided by a specific statute, if any, or more commonly, under the complex set of choice of law principles and rules developed by the courts. These choice of law rules generally follow either the "center of gravity" theory under the Restatement (Second) of Conflict Laws (1971) (hereinafter "Restatement 2d") or the doctrine of *lex loci contractus* (the place of the contract) or some variation of these two approaches. The center of gravity theory under Restatement 2d identifies the following as relevant factors: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile and place of incorporation of the parties. The Policy will be delivered in Georgia, premiums will be paid in Georgia and death benefits or other policy values will be paid to the Trustee in Georgia.

If the Borrower's insurable interest in the Insured is, in fact, challenged in Georgia, a Georgia court will likely apply the *lex loci contractus* doctrine. Georgia courts continue to expressly reject the application of Restatement 2d and its center of gravity theory. See Convergys Corp. v. Keener, 276 Ga. 808, 811, 582 S.E.2d 84, 86 (2003). Thus, unless a contract, itself, expressly indicates that it is to be performed in a state other than that the state in which such contract was made, a Georgia court generally will find that such contract is governed by the law of the place where it is made, or delivered. See id. As the application for the Policy will be solicited from the Borrower in Georgia by a life insurer or its duly authorized agent and signed by the Borrower in Georgia, and the insurer issuing the Policy will deliver the Policy to the Borrower in Georgia, under Georgia's choice of law rules, the Policy would likely be governed by Georgia law.

While different states may apply various choice of law theories, most courts analyzing choice of law issues will primarily focus on whether a state other than Georgia has an overriding interest in the underlying transaction or the outcome of the dispute such that the laws of that state should properly be applied over the laws of Georgia. In determining the relative interest of another state, the court would weigh the relative significance of the transaction and the dispute to Georgia versus the other state. In doing so, a court will look to see whether a fundamental public policy of the other state would be compromised by the application of Georgia law, and, if so, whether it is appropriate to give deference to the public policy concerns of the other state based on the relative extent of the contacts which the transaction and dispute have with that state versus Georgia. We note that the Insured is a resident of the State of New York. As

more fully provided herein, our opinions are limited solely to the Georgia Insurance Laws. Accordingly, in the event that an action at law or in equity should be instituted pursuant to which the laws of the State of New York or any law other than the Georgia Insurance Laws shall govern, we express no opinion with respect to the validity of the insurable interest of the Borrower in the life of the Insured. We have made no analysis with respect to the insurance laws of the state of New York. Because the prior written consent of the Insured to the Borrower's purchase of the Policy will be obtained, conflict of law issues may not be a significant consideration as a practical matter.

Once the Policy has been validly purchased by the Borrower, the subject of insurable interest is no longer relevant under Georgia law. The insurable interest must only exist at the time a life insurance policy is issued. See Burton v. John Hancock Mut. Life Ins. Co., 298 S.E.2d 575 (Ga. App. 1982). Under the Georgia Insurance Code this is true as O.C.G.A. Section 33-24-3(d) expressly provides that "an insurable interest must exist at the time the contract of personal insurance becomes effective but need not exist at the time the loss occurs." See also Hadden, 190 S.E.2d 638; Quinton v. Millican, 26 S.E.2d 435 (Ga. 1943).

We undertake no obligation and hereby disclaim any such obligation to update or otherwise revise this memo if any applicable statutory, regulatory or judicial authority changes after the date hereof. In addition, this memo is based solely on the accuracy of the facts and assumptions expressly stated herein, and the conclusions, statements and views expressed herein cannot be relied on, and may change, if any of the facts or assumptions described herein are, or later become, inaccurate or incomplete in any respect.

In addition to the assumptions, qualifications, limitations, and conditions provided hereinabove, we base the above opinions on the assumptions that the Issuing Trust will be duly and properly organized, formed, capitalized and operated under the relevant laws of Delaware as described in the Liberty Premium Finance Program.

The opinions expressed above are subject to the following qualifications and limitations:

(a) This letter and the opinions contained herein are limited to the matters expressly set forth herein, and no opinion is to be implied or may be inferred beyond the matters expressly so stated.

(b) The opinions contained herein are provided as legal opinions only and not as guaranties or warranties of any of the matters discussed herein.

LORD BISSELL BROOK LLP
ATTORNEYS AT LAW

Liberty One Funding Trust
August 25, 2004
Page - 10 -

(c) We are members of the Bar of the State of Georgia and do not herein express any opinion as to any matters governed by any laws of any other jurisdiction other than the laws of the State of Georgia.

(d) This letter and the opinions expressed herein are as of the date of this letter, and we expressly disclaim any undertaking to advise you of any changes which hereafter may be brought to our attention which may alter, in whole or in part, any of our opinions.

(e) We have only examined the Georgia Insurance Laws and are not expressing any opinions as to other issues, including, but not limited to tax, securities, substantive consolidation, or true sale.

Our opinions expressed above are limited solely to Georgia Insurance Laws, and we do not express any opinion herein concerning any other law.

A copy of this opinion letter may be delivered by any of you to any Person that becomes a secured party of the Issuing Trust in accordance with the provisions of the Trust Agreement. Any such Person may rely on the opinions expressed above as if this opinion letter were addressed and delivered to such Person on the date hereof.

Except as provided for in the immediately preceding paragraph, this opinion is rendered to you solely for your benefit pursuant to Section 2.01 of the Financing Agreement. As such, it may be relied upon by you only and may not be used, quoted in whole or in part, referred to, filed with any government agency, or relied upon by, or distributed by you to any other person for any purpose whatsoever without your receipt of our prior written consent.

Sincerely,

LORD, BISSELL & BROOK LLP

Lord, Bissell & Brook, LLP

276063_1

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the respective dates specified below with the effect from the date specified on the first page of this Agreement.

LIBERTY ONE FUNDING TRUST
By: Wells Fargo Bank, N.A.,
not in its individual capacity,
but solely as Georgia Trustee

By: ______________________
Name: Robert D. Mason
Title: V.P
Date: 5/24/2004
Place of execution: Atlanta, Georgia

JULIUS NEUMANN GEORGIA, LLC
By: Wells Fargo Bank, N.A.,
not in its individual capacity,
but solely as Manager

By: ______________________
Name: Robert D. Mason
Title: V.P
Date: 5/24/2004
Place of execution: Atlanta, Georgia

JULIUS NEUMANN, Insured

______________________
Name:
Date:

WELLS FARGO BANK, N.A.,
in its capacity as securities intermediary

By: ______________________
Name: Robert D. Mason
Title: V.P
Date: 5/25/2004
Place of execution: Atlanta, Georgia